■ In the Matter of NEW YORK CITY TRANSIT AUTHORITY, Petitioner, v STATE DIVISION OF HUMAN RIGHTS et al., Respondents.—Proceeding pursuant to Executive Law § 298 to review a determination of the respondent Commissioner of the New York State Division of Human Rights, dated October 21, 1988, which, inter alia, (1) found that the petitioner New York City Transit Authority had discriminated against the complainant Adrienne Nash, on the basis of her gender, and (2) awarded

her $450,000 in compensatory damages. Presiding Justice Mangano and Justice Ritter are substituted for former Justice Brown and the late Justice Kooper (22 NYCRR 670.1 [c]). By decision and judgment dated July 2, 1990, this court granted the petition to the extent that the third decretal paragraph of the determination, awarding the complainant $450,000 for "mental anguish and aggravation" was annulled. The determination was otherwise confirmed, the proceeding was otherwise dismissed on the merits, and the matter was remitted to the respondent New York State Division of Human Rights for the imposition of a new award of compensatory damages not to exceed $75,000 (see, Matter of New York City Tr. Auth. v State Div. of Human Rights, 163 AD2d 315). By decision and order dated July 2, 1991, the Court of Appeals reversed the decision and judgment of this court and remitted the matter here for further proceedings (see, Matter of New York City Tr. Auth. v State Div. of Human Rights, 78 NY2d 207).

Adjudged that the determination is confirmed, and the proceeding is dismissed, with costs to Adrienne Nash payable by the petitioner New York City Transit Authority, to be taxed by the County Clerk of Kings County.

This case involves four separate episodes of unlawful discriminatory conduct by the New York City Transit Authority (hereinafter the NYCTA) that took place over a period between June 1981 and August 1982 relating to the complainant's employment status as a bus driver before, during, and after her pregnancy. The complainant, who had been working as a bus driver for the NYCTA since 1978, learned that she was pregnant in June 1981. Because she had prior miscarriages, and a prolonged fertility problem, she requested restricted duty which would have allowed her to continue working with other responsibilities without having to undergo the physical rigors of driving a bus on city streets. In support of her request, the complainant submitted a letter from her personal physician advising her to restrict physical activity and avoid sudden jolting or jarring, prolonged standing, and excessive lifting or bending.

The request was initially approved, but after approximately one week of restricted duty, the complainant was abruptly returned to full-duty status without explanation. Since she could not afford to be out of work without pay, she resumed driving a bus but asked the NYCTA to reconsider her request for restricted duty. A second letter was submitted from her physician noting that the complainant had been experiencing cramps and spotting, and was fearful of losing her expected

child. The letter stated further that "[d]riving a bus would definitely expose her to the possibility of a miscarriage". Nonetheless, the request was denied.

On July 16, 1981, while on full-time status, the complainant had a miscarriage and was then placed on leave without pay. In September 1981 with her doctor's approval, she requested reinstatement to full-duty status but was placed on restricted duty and required to undergo a psychiatric evaluation. She was restored to full-duty status on September 8, 1981, but only after a NYCTA psychiatrist made her promise that she would stop working if she became pregnant again.

The complainant continued working as a full-duty driver until January 13, 1982, when she learned that she was pregnant and once again requested restricted duty. Her request was denied and she was forced to go on unpaid maternity leave until after the birth of her child on August 21, 1982.

Compensatory damages were sought against the NYCTA in connection with the following four acts of sex discrimination: (1) refusing to place her on restricted duty during the period of her temporary disability due to pregnancy, (2) refusing to restore her to full-duty status after her miscarriage, (3) requiring her to submit to a psychiatric evaluation when she requested reinstatement to full-time duty in September 1981, and (4) forcing her, when she requested restricted duty, to go out on unpaid leave from January until August 1982.

The Administrative Law Judge who characterized this as a "shocking" instance of sex discrimination, found that the acts of the NYCTA—done intentionally to hurt the complainant—caused her anguish, guilt, depression, and anger, at the time each incident occurred, and that her mental distress persisted even to the time of her testimony before him in late 1987 and early 1988.

Based on the recommendations of the Administrative Law Judge, the Commissioner found that the NYCTA had discriminated against the complainant solely because of her pregnancy and awarded her $450,000 in compensatory damages arising from the four established incidents of sex discrimination.

When this case was originally before us, this court confirmed the Commissioner's determination that the complainant had been the victim of sex discrimination in violation of the Human Rights Law (Executive Law art 15). However, the award of compensatory damages for her mental anguish was found to be excessive and the matter was remitted to the

respondent State Division of Human Rights for a new award not to exceed $75,000.

The Court of Appeals concluded this court had failed to apply the correct standard of judicial review for evaluating compensatory damages awarded in connection with employment discrimination claims prosecuted under the Human Rights Law. In remitting the matter to this court for further review of the award, the Court of Appeals emphasized the requirement that a reviewing court must afford great deference to the Commissioner's expertise in assessing the severity and extent of a claimant's injuries.

Although judicial review must be more than a rubber stamp of the agency's determination, "the Commissioner's factual findings as to the existence of mental anguish as a consequence of unlawful discrimination, when supported by sufficient evidence on the record considered as a whole, are * * * binding on the reviewing court" *(Matter of New York City Tr. Auth. v State Div. of Human Rights,* 78 NY2d 207, 216, *supra),* and the damages award should be sustained provided there is "some evidence of the magnitude of the injury, to assure that [it] is neither punitive nor arbitrary" *(Matter of New York City Tr. Auth. v State Div. of Human Rights, supra,* at 217). The matter was remitted to this court to determine whether the relief was reasonably related to the wrongdoing, whether the award was supported by evidence before the Commissioner, and how it compared with other awards for similar injuries.

Upon our further review of the record before the Commissioner, and reconsideration of our decision in light of the standard and guiding considerations enumerated in the opinion of the Court of Appeals, we now conclude that the Commissioner's award of compensatory damages must be sustained. An award of damages was warranted in order to compensate the complainant for her demonstrated mental anguish, and was reasonably related to the wrongdoing in this case, described by the Hearing Judge as "the most shocking instance of abuse of an employee by an employer" in his 20-year experience with the Division of Human Rights.

In addition, there is sufficient evidence in the record of the magnitude of the complainant's injury to assure us that the award was neither punitive nor arbitrary. The complainant was the victim of a series of four intentional episodes of sex discrimination that continued for a period of in excess of one year. She testified that she suffered anguish, guilt, depression,

and anger at the time of each occurrence, and that her mental anguish persisted even to the time of the hearing in late 1987 and early 1988, a period of more than six years. Indeed, there is sufficient evidence to support the Commissioner's conclusion that her mental anguish, caused by the unlawful acts of the NYCTA, will continue for the rest of her life.

We have found no reported cases in New York involving the type of prolonged, intentional sex discrimination committed by the NYCTA in this case, or any case where the magnitude of the psychic injury was comparable to that suffered by the complainant here. However, one case that was settled out of court, *Alversa v City of New York* (8 NY Jury Verdict Rptr, Issue 50, at 16 [SD NY 1991]), provides some benchmark for evaluating the amount of compensatory damages awarded in this case. The lawsuit in *Alversa* involved 22 female New York City Corrections Officers who claimed that they were fired because they advised their employer that they were pregnant but refused to have an abortion in order to continue on the job. In April 1991 the parties reached an out-of-court settlement providing, *inter alia,* for the immediate payment of $2,200,000 and job reinstatement for all of the officers. The settlement awards for compensatory damages ranged from $55,000 to $160,000.

The amounts awarded here in connection with the four separate incidents of sex discrimination ranged from $50,000 to $250,000. Although the award for one of the incidents exceeds the largest settlement amount in *Alversa,* the complainant here was subjected to repeated acts of intentional sex discrimination and has suffered mental anguish over a prolonged period of time which will continue in the future. These factors justify the award of a greater amount in this case. Accordingly, we conclude that the amount awarded was not excessive, arbitrary or punitive. There being sufficient evidence in the record establishing that the award was reasonably related to the wrongdoing, it must be confirmed, and the petition dismissed. Mangano, P. J., Lawrence, O'Brien and Ritter, JJ., concur.