**Douglas McINTOSH, Plaintiff,**

v.

**IRVING TRUST COMPANY, Defendant.**

No. 87 Civ. 6741 (JGK).

United States District Court,
S.D. New York.

June 3, 1995.

his race by failing to promote him from the position of Customer Relations Assistant to that of Assistant Secretary and by terminating him. The plaintiff also alleged that the defendant intentionally retaliated against him by continuing to deny him a promotion, by disciplining him and by terminating him after he complained of discrimination. The plaintiff brought his claims pursuant to 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1964 and the New York Human Rights Law. A more detailed description of the action is contained in the Court's previous decision which disposed of various matters related to the entry of the judgment in this case. *See McIntosh v. Irving Trust Co.*, 873 F.Supp. 872 (S.D.N.Y.1995).

Following an eight-day trial, the jury rendered a special verdict for the plaintiff under the New York Human Rights Law, finding that the plaintiff was terminated in retaliation for his complaints of discrimination and awarding him $310,000.00 in back pay and $219,428.00 in compensatory damages for pain, suffering, humiliation, mental anguish and emotional distress. The jury determined, under the New York Human Rights Law, that McIntosh was not discriminated against because of his race when the Bank failed to promote him and when it terminated him.

The defendant Irving Trust Company has moved for a new trial under Rule 59 of the Federal Rules of Civil Procedure solely with respect to the jury's award of $219,428.00 in compensatory damages under the New York Human Rights law.[1]

Vladeck, Waldman, Elias & Engelhard, P.C. by Julian R. Birnbaum, Suja A. Thomas, New York City, for plaintiff.

Proskauer Rose Goetz & Mendelsohn by Howard L. Ganz, Aaron J. Schindel, Jennifer A. Borg, New York City, for defendant.

## OPINION AND ORDER

KOELTL, District Judge:

The plaintiff, Douglas McIntosh, brought this action against his former employer, Irving Trust Company ("the Bank"), on September 4, 1987. The plaintiff, who is African American, alleged that the Bank had intentionally discriminated against him because of

### I.

In discussing the appropriate standards a court should apply in determining whether there should be a new trial, the Court of Appeals for the Second Circuit has explained:

The trial judge, exercising a mature judicial discretion, should view the verdict in the overall setting of the trial; consider

---

1. This case was brought under Title VII prior to the 1991 amendments; therefore, the plaintiff did not seek compensatory damages under Title VII. *See Postema v. National League of Professional Baseball Clubs*, 998 F.2d 60, 61–62 (2d Cir.1993) (jury trial and damages provisions of the 1991 Act are not retroactive); *Carrero v. New York City Housing Auth.*, 890 F.2d 569, 581 (2d Cir.1989) (no compensatory or punitive damages are recoverable under Title VII prior to the 1991 amendments).

the character of the evidence and the complexity or simplicity of the legal principles which the jury was bound to apply to the facts; and abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result. The judge's duty is essentially to see that there is no miscarriage of justice. If convinced that there has been then it is his duty to set the verdict aside; otherwise, not.

*Bevevino v. Saydjari*, 574 F.2d 676, 684 (2d Cir.1978); *see also Piesco v. Koch*, 12 F.3d 332, 345 (2d Cir.1993); *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 875 (2d Cir.1992).

■ The defendant has satisfied this standard and is entitled to a new trial on the issue of compensatory damages unless the plaintiff agrees to a remittitur reducing his award to $20,000.00. The Court is convinced, after reviewing all of the evidence in the case and comparing the jury's award with other awards under the Human Rights Law, that the jury reached a seriously erroneous result and that denying a remittitur in this case would result in a miscarriage of justice.

## II.

■ The plaintiff argues that the circumstances of this case do not justify interfering with the jury's critical function of assessing damages. The plaintiff is quite right that a reviewing court owes great deference to a jury in its performance of this crucial role. *See, e.g., Ismail v. Cohen*, 899 F.2d 183, 186 (2d Cir.1990) ("It is well settled that calculation of damages is the province of the jury."). However, there are boundaries to this deference. A damage award should be upheld unless it is "so excessive 'as to shock the judicial conscience.'" *Scala v. Moore McCormack Lines*, 985 F.2d 680, 683 (2d Cir.1993) (citing *Wheatley v. Ford*, 679 F.2d 1037, 1039 (2d Cir.1982)).

The defendant argues: first, that the plaintiff failed to introduce sufficient evidence at trial to justify the jury's compensatory damages verdict; and second, that even if the plaintiff had introduced additional evidence with respect to the nature and extent of any emotional damages, comparable cases, both state and federal, indicate that an award of only $5,000.00 is appropriate.

With respect to the extent of the evidence of any mental anguish or emotional injury, the only such trial testimony came from the plaintiff, himself. The plaintiff testified to highly subjective feelings that he said he experienced during certain incidents at work. For example, he testified that he "felt humiliated" during a meeting when his supervisor "interrogated" him in "an accusatory manner" about prospective clients he was working to obtain and that he felt "shocked" and "angry" when he was given a reprimand that he believed, and the jury may very well have concluded, was unwarranted. (Trial Tr. of 11/9/94 at 124–25, 145.) And, he testified that when he was required to have daily meetings to review his work with both his supervisor and his team leader, in full view of the rest of his department, he "felt like dirt[,]" was humiliated and embarrassed and "felt terrible." (Trial Tr. of 11/9/94 at 164.) Finally, the plaintiff testified that when he received a "final warning" from his supervisor, he felt "very badly" because he "got the impression that they were going to try to fire [him]." (Trial Tr. of 11/10/95 at 11.)

The plaintiff also testified that the Bank's treatment of him resulted in limited and short-lived physical manifestations of his mental distress during his employment. Specifically, he testified that he stayed home sick from work for several days and saw a doctor once because of ailments related to nervous tension—he felt weakness in his legs, had stomach cramps, had chest pains and felt "beaten down" mentally. (Trial Tr. of 11/9/94 at 132–33, 177.)

The plaintiff testified that when he was terminated, he "was devastated," and that he was angry and depressed. (Trial Tr. of 11/10/94 at 29–30.) He also testified that he avoided his family at holidays because he was embarrassed and ashamed and he testified to feelings of inadequacy because his wife had to support him. (Trial Tr. of 11/10/94 at 30–32.)

McIntosh did not testify in any detail with respect to the magnitude or the duration of any mental distress. He did not testify that

his life activities were curtailed in any way. Additionally, there was no evidence that the plaintiff sought any medical or psychological help except for one visit to a doctor while he was still employed. There was no evidence that the plaintiff sought any medical or other professional help for any alleged emotional distress in the approximately seven and one half years between his termination and the trial.

■ Because the plaintiff introduced such sparse evidence with respect to the magnitude and duration of any emotional injury or mental distress that he sustained, the jury was forced to speculate in awarding him compensatory damages. It is precisely this kind of speculation that is insufficient to support a jury award, as the New York Court of Appeals found in *Cullen v. Nassau County Civil Serv. Comm'n*, 53 N.Y.2d 492, 425 N.E.2d 858, 442 N.Y.S.2d 470 (1981). Because the complainant in *Cullen* did not prove that she suffered any mental anguish or humiliation, she could not recover compensatory damages under the New York Human Rights Law. *Id.* at 497–98, 425 N.E.2d at 861, 442 N.Y.S.2d at 473. The court explained the reason why emotional injuries cannot be presumed: "[S]ensitivity or stoicism, as the case may be, is as variable and individualistic in its existence and in its degree as are human beings." *Id.* at 497, 425 N.E.2d at 861, 442 N.Y.S.2d at 473. Therefore, a plaintiff must introduce evidence of actual mental or emotional injury in order to recover compensatory damages.

■ Here, the plaintiff accurately identifies trial testimony that describes the unlawful way that the jury found his supervisor treated him, including subjecting him to daily counseling sessions. (Pl.'s Brief at 5.) However, the plaintiff has not identified, and the complete trial record does not contain, sufficient evidence with respect to the effect such treatment had on him in terms of any mental distress or emotional injury to justify the jury's award of compensatory damages in this case. The evidence of retaliatory conduct justified the finding of retaliation which resulted in the substantial award of over $300,000.00 in back pay. This award is not challenged by the defendant. However, it does not follow that simply because there was retaliation, there must be an award of compensatory damages; rather, the compensatory damages must be proven and not presumed.[2]

■ It is this Court's function, while appropriately respecting the jury's crucial role, to guard against such speculative damage awards. *See, e.g., Ragin v. New York Times Co.*, 923 F.2d 995, 1005 (2d Cir.) ("judicial control" over the size of damage awards for emotional injury prevents liability predicated on "baseless claims" for emotional injury), *cert. denied*, 502 U.S. 821, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991); *Portee v. Hastava*, 853 F.Supp. 597, 613 (E.D.N.Y.1994) (appropriate for the court to "exercise its discretionary control" over the jury's award where the damages bore no relationship to the injuries proved at trial and were "far out of line" with awards in similar cases).

■ If the Court were to accept the evidence introduced at trial as sufficient to support the jury's award for compensatory damages, it would, in effect, be establishing a per se rule that once a defendant is found liable for unlawful retaliation, the plaintiff is entitled to damages for mental anguish. However, such a rule has been rejected. *See Cullen*, 53 N.Y.2d at 497, 425 N.E.2d at 861, 442 N.Y.S.2d at 473 (1981) ("The record must contain proof that the complainant in fact suffered mental anguish or humiliation....") (citation omitted); *see also Binder v. Long Island Lighting Co.*, 847 F.Supp. 1007, 1027–28 (E.D.N.Y.1994) ("Damages for pain and suffering are compensatory, not exemplary, in nature. There must therefore be some evidence of the magnitude of the injury to

---

**2.** Similarly, the plaintiff argues that other witnesses testified with respect to the humiliation, pain and suffering, embarrassment and emotional distress that he suffered, supporting the jury's award. (Pl.'s Brief at 2.) However, that is just not so. Other witnesses, such as a former co-worker of the plaintiff's, testified to the way in which the plaintiff was treated by his supervisor. (Trial Tr. of 11/9/94 at 13–18.) However, this is testimony about the defendant's retaliatory conduct—it is not testimony about any manifestation of emotional or mental injury and, therefore, it does not cure the deficiencies in the plaintiff's own testimony.

ensure that the award is not punitive.") (citations omitted); *Northern Orchard Co., Inc. v. State Div. of Human Rights,* 161 A.D.2d 846, 846–47, 555 N.Y.S.2d 892, 893 (3d Dep't) ("Although an award for mental anguish may be based solely on the complainant's testimony, damage may not be presumed because of the nature of the discrimination itself.") (citing *Cullen,* 53 N.Y.2d at 497, 425 N.E.2d at 861, 442 N.Y.S.2d at 473), *appeal denied,* 76 N.Y.2d 713, 565 N.E.2d 518, 563 N.Y.S.2d 769 (1990). A plaintiff's recovery of damages for mental anguish under the New York Human Rights Law is limited to compensation for actual and proven injury and while proof of mental anguish or emotional distress does not have to include medical testimony and it may consist of the plaintiff's testimony, alone, as corroborated by reference to the circumstances of the alleged misconduct, *see New York City Transit Auth. v. State Div. of Human Rights,* 78 N.Y.2d 207, 216, 577 N.E.2d 40, 45, 573 N.Y.S.2d 49, 54 (1991), the plaintiff did not present proof to the jury that could justify the jury's award.

The plaintiff's argument that the jury's verdict should not be disturbed because the Court's charge on compensatory damages was correct misses the point. Although the jury was instructed to base its verdict on the evidence and to award damages to compensate the plaintiff, the verdict demonstrates that this is not what happened.

■ A careful analysis of damage awards in other cases demonstrates that the jury verdict for compensatory damages in this case cannot stand. In reviewing damage awards in other cases it is, of course, important to examine the particular facts and circumstances of the other cases and compare them to those of this case. *See Scala,* 985 F.2d at 684. As the Court of Appeals explained in *Martell v. Boardwalk Enters., Inc.,* 748 F.2d 740 (2d Cir.1984):

> In determining whether an award is so excessive as to shock the judicial conscience, we look, as a court sitting in diversity, to other jury awards condoned by the courts of the state whose substantive law governs the rights of the parties, in this case New York State. While there are difficulties inherent in comparing one personal injury award to another because differentiating facts in each case 'limit the precedential value of a court's treatment of awards in other apparently similar cases,' we nonetheless have the responsibility to ensure 'that the damage award does not exceed that which could be sustained were the case before the highest court of the state whose substantive law gives rise to the claim.' . . . New York appellate courts regard prior awards as not binding but instructive. Jury verdicts and judicial opinions approving or disapproving them, when considered over a period of time, provide 'some indication of the consensus of opinion of jurors and courts as to the proper relation between the character of the injury and the amount of compensation to be awarded.'

*Id.* at 750 (citations omitted).

A review of the cases decided under New York law, in conjunction with a close examination of the facts and circumstances of this case, demonstrates that the defendant's motion should be granted.

First, the plaintiff's testimony in this case is much closer than he admits to the conclusory testimony of plaintiffs in cases where compensatory damage awards have been reduced substantially. In *Borja–Fierro v. Girozentrale Vienna Bank,* No. 91 Civ. 8743, 1994 WL 240360 (S.D.N.Y. May 27, 1994) (Metzner, J.), the court reduced a damage award for mental anguish suffered in connection with a retaliatory discharge from $160,000.00 to $15,000.00. *Id.* at *4. In that case, the plaintiff was the only witness to testify to his mental anguish. *Id.* at *3. The court characterized the plaintiff's testimony as "brief" and "not particularly strong[,]" *id.,* although in that case, unlike here, the plaintiff went to a psychologist in part because of the discrimination by the defendant. *Id.* Reviewing the New York and federal cases in which there were jury awards based on "similarly vague and conclusory testimony," Judge Metzner concluded that an award of $15,000.00 was justified. *Id.* at *4; *see also Dessie v. Generale Bank,* 799 F.Supp. 1544, 1553 & n. 5 (S.D.N.Y.1992) (the plaintiff's testimony that he was "upset," was "very disappointed" and had been having problems

with his heartbeat in the months prior to his termination was insufficient to support a $40,000.00 award for mental distress); *Quality Care, Inc. v. Rosa,* 194 A.D.2d 610, 611, 599 N.Y.S.2d 65, 66 (2d Dep't 1993) (absent evidence of the duration of the complainant's condition, its severity or consequences, and in the absence of evidence of any medical treatment, award of $10,000.00 reduced to no more than $5,000.00—complainant testified that she was " 'shock[ed]' and 'devastated' by her termination, that she was 'in a real pickle', and that she felt bad[ ]"); *Cosmos Forms, Ltd. v. State Div. of Human Rights,* 150 A.D.2d 442, 442, 541 N.Y.S.2d 50, 51 (2d Dep't 1989) ($35,000.00 award reduced to no more than $5,000.00; the only evidence of mental anguish was the complainant's own testimony that she was " '[e]motionally and physically screwed up' " and there was no evidence of the duration of her condition, its severity or consequences, or any medical treatment).

Second, the cases reviewing damage awards by the New York State Division of Human Rights are not inapposite, as the plaintiff argues. Hence, it is highly significant that the vast majority of such awards are in the $5,000.00 to $10,000.00 range. *See Borja–Fierro,* 1994 WL 240360 at *4. While it is true that here the Court is called upon to review a jury verdict, these cases, which the plaintiff tries to distinguish "across the board," are highly instructive. They provide guidance with respect to appropriate awards under the Human Rights Law. Accordingly, other courts have considered such cases in assessing whether a damage award "shocks the judicial conscience." *See, e.g., Crimmins v. Consol. Edison Co.,* No. 87 Civ. 6971, 1989 WL 101915, *2 (S.D.N.Y. Aug. 25, 1989) (Patterson, J.). Moreover, the standards of review with respect to Human Rights Division awards and jury verdicts are not so different as to make the Human Rights Division cases inapposite. The New York Court of Appeals recently discussed the way in which an appellate court should review an award by the New York State Human Rights Division in *New York City Transit Auth. v. State Div. of Human Rights,* 78 N.Y.2d 207, 577 N.E.2d 40, 573 N.Y.S.2d 49 (1991). The court explained:

Several competing considerations must be taken into account in the review of mental anguish claims prosecuted before the Division. Favoring deference to the assessments of the Commissioner are the important objectives of the Human Rights Law, the discretion vested in the agency to achieve those objectives, and its four decades of special experience in weighing the merit and value of such claims. On the other hand, the Legislature has stipulated that the agency may award only compensatory—not exemplary—damages and it has provided for judicial review. If judicial review is to be more than a rubber stamp of agency orders, obviously there must be sufficient proof of mental anguish caused by the discrimination, as well as the extent of injuries being compensated.

*Id.* at 215–16, 577 N.E.2d at 44–45, 573 N.Y.S.2d at 53–54; *see also New York State Dep't of Correctional Servs. v. State Div. of Human Rights,* 207 A.D.2d 585, 585–86, 615 N.Y.S.2d 531, 532 (3d Dep't 1994) ("In reviewing . . . an award [by the Commissioner], a court will intervene only when the award is not reasonably related to the wrongdoing, is not supported by substantial evidence or does not compare with awards for similar injuries."). Here, the court is charged with ensuring that, based on the evidence introduced at trial, the jury's verdict is not so excessive as to shock the judicial conscience.

Third, in cases where courts uphold compensatory damage awards of the approximate magnitude of the jury's award in this case, there is significantly more evidence, both quantitatively and qualitatively. For example, in *New York City Transit Auth. v. State Div. of Human Rights,* 181 A.D.2d 891, 581 N.Y.S.2d 426 (2d Dep't), *appeal denied,* 80 N.Y.2d 762, 607 N.E.2d 818, 592 N.Y.S.2d 671 (1992), on which the plaintiff heavily relies, the court upheld a $450,000.00 compensatory damages award for sex discrimination, finding that the award was necessary to compensate the complainant for her proven mental anguish, was reasonably related to the defendant's wrongdoing and was supported by sufficient evidence of the magnitude of the complainant's injury. *Id.* at 894–95, 581 N.Y.S.2d at 429. The plaintiff had

been the victim of four intentional episodes of sex discrimination related to her pregnancy and while there was insufficient proof that the defendant's wrongdoing caused the plaintiff's miscarriage, there was a sufficient link between the misconduct and the complainant's mental anguish, guilt and depression at the time of each episode, as well as at the hearing six years later, to justify the award. *Id.* at 894–95, 581 N.Y.S.2d at 429. Moreover, the administrative law judge, who presided over the hearing, had found the case to be " 'the most shocking instance of abuse of an employee by an employer' " in his twenty years at the Division of Human Rights. *Id.* at 894, 581 N.Y.S.2d at 429. The Appellate Division found no case that was comparable with respect to either the prolonged and intentional sex discrimination or the magnitude of the psychic injury. *Id.* at 895, 581 N.Y.S.2d at 429; *see also Schneider v. National R.R. Passenger Corp.,* 987 F.2d 132, 137 (2d Cir.1993) (upholding a compensatory damage award of about $1,000,000.00 under FELA where the plaintiff, who could no longer hold down a full-time job, suffered from post traumatic stress disorder, flashbacks and an inability to socialize normally); *Smith v. Tiffany & Co.,* No. 1B–E–CS–84–97230, 18 (State Div. of Human Rights, Aug. 11, 1995) (awarding $300,000.00 for mental anguish and humiliation under the Human Rights Law where the complainant "developed a severe narcissistic injury or blow to her self-esteem ... [and] experienced severe depression, anxiety, agitation, occasional anorexia and insomnia[ ]") (citation omitted). These cases are not comparable to this case. The injuries in those cases were demonstrably more severe than those testified to in this case.

Moreover, even in cases where courts have reduced damage awards that are much lower than the jury's award in this case, there has been appreciably more evidence of emotional injury. For example, in *New York State Dep't of Correctional Servs. v. State Div. of Human Rights,* 207 A.D.2d 585, 615 N.Y.S.2d 531 (3d Dep't 1994), the Appellate Division, Third Department reduced an award for mental anguish and humiliation by the State Division of Human Rights under the Human Rights Law from $25,000.00 to $10,000.00.

*Id.* at 587, 615 N.Y.S.2d at 533. There, the complainant testified that as a result of the discriminatory conduct by her employer, she felt frustrated, depressed and angry to the point that she lost sleep and became embroiled in arguments with her fiance. *Id.* 615 N.Y.S.2d at 532. She further testified that she saw a psychiatrist five or six times. *Id.* This evidence, particularly of the visits to a psychiatrist, was much stronger than the evidence in this case but the Appellate Division reduced the award for mental anguish and humiliation from $25,000.00 to $10,000.00. *Id.* 615 N.Y.S.2d at 533; *cf. Gleason v. Callanan Indus. Inc.,* 203 A.D.2d 750, 752, 610 N.Y.S.2d 671, 673 (3d Dep't 1994) (upholding a jury award, under the New York Human Rights Law, of $54,000.00 in compensatory damages for emotional distress for retaliatory discharge where the plaintiff's testimony, which was corroborated by other witnesses' testimony, established that she suffered from irritable bowel syndrome, pains in her sides, insomnia, migraines and depression, and that, because of these ailments, she sought medical treatment).

At oral argument, counsel for the plaintiff conceded that the most common award of compensatory damages under the New York Human Rights Law is between $5,000.00 and $15,000.00. However, counsel argued that the range of permissible awards for emotional injury is much greater than this and that because the jury's award falls within this broader range, the Court should permit it to stand. *See, e.g., Petramale v. Local No. 17, Laborers' Int'l Union of North America,* 847 F.2d 1009, 1012–13 (2d Cir.1988) (reducing $200,000.00 compensatory damage award under the LMRDA to $100,000.00 where there was no expert medical testimony or testimony about the duration of the plaintiff's nervousness and sleeplessness and the plaintiff did not seek medical attention).

"[A] verdict is excessive as a matter of law if it exceeds any rational appraisal or estimate of the damages that could have been based upon the evidence before the jury." *Borja–Fierro,* 1994 WL 240360 at *3 (citing *Schneider v. National R.R. Passenger Corp.,* 987 F.2d 132, 137 (2d Cir.1993)). Under this definition, the jury's compensatory damages

award is excessive—the evidence adduced at trial simply cannot justify an award that is so much greater than the more typical awards approved under the Human Rights Law.

The plaintiff's argument notwithstanding, there is nothing inconsistent with recognizing the general conscientiousness of the jury in this case and setting aside one portion of the jury's verdict that was based on virtually no evidence and is grossly disproportionate with awards in comparable cases. *See, e.g., Scala,* 985 F.2d at 684 (citing *Vasbinder v. Scott,* 976 F.2d 118, 122–23 (2d Cir.1992)).

### III.

The compensatory damage award in this case "shocks the judicial conscience" because there plainly was insufficient evidence of the plaintiff's emotional injury to support it and because the award is grossly disproportionate to awards in similar cases. Therefore, the defendant's motion for a new trial is granted unless the plaintiff will agree by June 15, 1995, in writing, to a remittitur reducing the award from $219,428.00 to $20,000.00.

**SO ORDERED.**