Keith E. **MULLER**, Plaintiff,

v.

Joseph J. **COSTELLO**, Individually, and as Superintendent of Midstate Correctional Facility; Susan A. Connell, Individually, and as Deputy Superintendent of Midstate Correctional Facility; "John Doe", Individually, and as an Agent of Midstate Correctional Facility; Sgt. Joseph Ward, Individually, and as an Agent of Midstate Correctional Facility; Midstate Correctional Facility, New York State, and New York State Department of Correctional Services, Defendants.

No. 94–CV–842 (FJS) (GJD).

United States District Court, N.D. New York.

March 9, 1998.

Norman P. Deep, Clinton, NY, for Plaintiff.

Dennis C. Vacco, Attorney General of the State of New York, Albany, NY (Gregory J.

Rodriguez, Bruce J. Boivin, Asst. Attys. Gen., of counsel), for Defendants.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, District Judge.

### I. INTRODUCTION

Presently before the Court are the parties' post-trial motions. Defendant [1] moves (1) for judgment as a matter of law, or, in the alternative, for a new trial; (2) to cap the jury's verdict at $300,000; (3) to vacate or reduce the verdict as excessive; and (4) to dismiss the entire action for Lack of subject matter jurisdiction. Plaintiff moves (1) for an injunction in the form of reinstatement; (2) for an injunction to allow Plaintiff a special opportunity to take the New York State correctional officer sergeant's examination; and (3) for back pay and lost benefits.

### Background

On October 14, 1997, an eight person jury found the State of New York ("Defendant") liable for one count of intentional discrimination in violation of the Americans with Disabilities Act ("ADA") and one count of retaliation. *See* 42 U.S.C. § 12101 *et seq.* The jury awarded Plaintiff a total of $420,300 in damages. On the verdict form, the jury specifically awarded $285,000 in compensatory damages and $135,300 in unspecified damages. After polling the jury, the Court determined that each juror intended the full amount of $420,300 as compensatory damages.

### II. DEFENDANT'S MOTIONS

(a) Motion for Judgment as a Matter of Law

█ Pursuant to Rule 50 of the Federal Rules of Civil Procedure, Defendant argues that Plaintiff failed to introduce sufficient evidence to justify the jury's finding that he was disabled under the ADA. The Second Circuit has held that district courts must afford jury verdicts great deference and not substitute their own judgment for that of the

---

1. The only remaining Defendant is the State of New York, by and through its agent the New York State Department of Correctional Services ("DOCS").

jury. *See Mattivi v. South African Marine Corp.,* 618 F.2d 163, 167 (2d Cir.1980). In addition, district courts must view the evidence in a Light most favorable to the non-moving party and only disturb the jury's findings if there is either a complete lack of evidence, or if the evidence is so overwhelmingly supportive of the movant that allowing the jury verdict to stand would be patently unfair. *See id.* at 167–68; *Luciano v. Olsten Corp.,* 110 F.3d 210, 214 (2d Cir.1997); *Tanzini v. Marine Midland Bank,* 978 F.Supp. 70 (N.D.N.Y.1997). At the close of Plaintiff's case at trial, the Court orally denied a similar motion for the reasons stated on the record.

Defendant contends that Plaintiff failed to prove he was "disabled" under the ADA and/or that his impairment substantially Limited one or more of his major life functions, either breathing or working. Defendant also argues that Plaintiff was provided with a reasonable accommodation as a matter of law. Lastly, Defendant argues that there is insufficient evidence to support the jury's retaliation finding.

Defendant argues that Plaintiff failed to provide sufficient evidence that he was disabled because his alleged disability did not substantially Limit a major Life activity in that he could not show that his disability substantially affected his ability to work in a broad range or class of jobs. Defendant's cites to *Heilweil v. Mount Sinai Hosp.,* 32 F.3d 718 (2d Cir.1994). However, the Court finds that there was ample evidence to support a finding that Plaintiff's disability affected his ability to perform any job that might come in contact with smoke or other asthma inducing chemicals. Based upon the evidence submitted at trial, the Court finds the jury's verdict is well supported by the record.

#### (b) Defendant's Motion for a New Trial

■ Alternatively, pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, Defendant moves for a new trial. A new trial is appropriate when the Court becomes convinced that the jury reached a seriously erroneous result or if permitting the jury verdict to stand would result in a miscarriage of justice. *See Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 970 (2d Cir.

1987); *Tanzini v. Marine Midland Bank,* 978 F.Supp. 70 (N.D.N.Y.1997). While the Court need not necessarily weigh the evidence in the light most favorable to the non-moving party, disagreement with the verdict alone is insufficient to justify ordering a new trial. *See Mallis v. Bankers Trust Co.,* 717 F.2d 683, 688–89 (2d Cir.1983).

In support of its motion for a new trial, Defendant uses the same arguments advanced in support of its motion for judgment as a matter of law. While the standard is less rigorous than the Rule 50 standard, Defendant's motion is denied for the same reasons as articulated above.

#### (c) Defendant's Motion to Cap Damages at $300,000

■ As initially enacted, Title VII and other anti-discrimination statutes did not provide for compensatory damages. However, in 1991, Congress amended 42 U.S.C. § 1981a which now authorizes the recovery of compensatory damages by victims of intentional discrimination in employment. The ADA awards compensatory damages through this same statutory mechanism. As stated, the jury returned a verdict awarding Plaintiff $420,300 in compensatory damages. Defendant now moves to cap the award at $300,000 pursuant to 42 U.S.C. § 1981a(b)(3), which provides:

> The sum of the amount of compensatory damages awarded under this section for future pecuniary inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and the amount of punitive damages awarded under this section, shall not exceed ... $300,000.

*Id.*

Both parties agree that § 12112 (discrimination) damages are capped by § 1981a, but Plaintiff argues that § 1981a does not apply to § 12203 (retaliation). Plaintiff argues that the retaliation section has a different and separate enforcement mechanism from the discrimination section. Plaintiff cites no authority for such a proposition.

While the Second Circuit has not ruled on this issue, a recent case in the Sixth Circuit held that § 1981a applies to both retaliation

and discrimination damages. *See Hudson v. Reno*, 130 F.3d 1193 (6th Cir.1997). In *Hudson*, the jury awarded the plaintiff a total of $1.5 million: (1) $250,000 in compensatory damages for sex discrimination; (2) $500,000 in compensatory damages for retaliation; and (3) $750,000 in compensatory damages for constructive discharge. *Id.* at 1199. The district court capped damages at $300,000. The plaintiff argued that the $300,000 cap only applied per claim. On appeal, the Sixth Circuit affirmed by reasoning that the face of the statute was conclusive and there was no reason to stray beyond the statute's ordinary meaning. While *Hudson* did not involve the ADA, sex discrimination and retaliation are enforced through 42 U.S.C. § 1981a, just like the ADA.

Other courts which have addressed this issue have reached a similar conclusion as the *Hudson* case. In *Galliher v. Rubin*, 969 F.Supp. 1329 (S.D.Ga.1997), the court held that § 1981a applied to damages on a per lawsuit basis, not a per claim basis. The court stated "that a plaintiff who brings two separate Title VII actions, which are consolidated for purposes of trial, is entitled to recover only a single award of compensatory damages under § 1981a. If [plaintiff] prevails on both her retaliation claim and wrongful discharge claim, thus, she may recover a maximum of $300,000 in compensatory damages." *Id.* at 1331. Another similarly decided case occurred in *Martini v. Federal Nat'l Mortgage Assoc.*, 977 F.Supp. 464 (D.D.C. 1997), where plaintiff sued her employer for sex discrimination and retaliation in violation of Title VII and the District of Columbia Human Rights Act, which resulted in a total jury verdict of $6,948,307.40. After a motion to reduce the verdict, the court held that § 1981a "clearly requires that the Court reduce Plaintiff's Title VII recovery for compensatory and punitive damages for both her discrimination and retaliation claims from $4,893,807.40 to $300,000." *See id.* at 470; *see also Talbott v. Empress River Casino*, No. 95–C–5317, 1997 WL 458437 (N.D.Ill. Aug. 4, 1997).

Thus, given the plain meaning of § 1981a and the case law cited above, the Court finds that Plaintiff's compensatory damage award must be capped at $300,000.

**(d) Defendant's Motion to Vacate or Reduce the Verdict as Excessive**

■ Defendant also moves to vacate or reduce the jury verdict as excessive. In the Second Circuit, the standard for reducing or overturning a jury verdict is that a "jury's damage award may not be set aside unless 'the award is so high as to shock the judicial conscience and constitute a denial of justice.'" *O'Wade v. Orange County Sheriff's Office*, 844 F.2d 951 (2d Cir.1988) (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 13 (2d. Cir.1988)); *see also McIntosh v. Irving Trust Co.*, 887 F.Supp. 662 (S.D.N.Y.1995); *Luciano v. Olsten Corp.*, 912 F.Supp. 663 (E.D.N.Y.1996).

In applying this test, the Court must look to the evidence and other similar type cases to determine whether the award is excessive. Defendant cites to a variety of non-ADA cases, which as a whole, involve instances of isolated, generally short-term periods of either discrimination or injury. Here, Plaintiff submitted evidence of discrimination that had taken place over a period of years during which time he was forced to endure mental suffering, embarrassment, economic hardship, actual termination and physical injury. In view of this evidence, the Court finds that the jury award of $300,000 is not excessive and does not shock the conscience as a matter of law.

**(e) Subject Matter Jurisdiction**

**(1) *The ADA and State Prison Employees***

■ Defendant argues that the ADA does not apply to state prisons and cites to two circuit opinions as authority. *See Amos v. Maryland Dep't of Pub. Safety & Correctional Servs.*, 126 F.3d 589 (4th Cir.1997); *White v. Colorado*, 82 F.3d 364, 367 (10th Cir.1996). However, neither of these cases addressed whether the ADA applied to *employees* of state prisons, but only addressed whether state *prisoners* were covered by the ADA. *See Yeskey v. Commissioner of Pennsylvania Dep't of Corrections*, 118 F.3d 168, 174 (3d Cir.1997); *Onishea v. Hopper*, 126 F.3d

1323 (11th Cir.1997). While the Court acknowledges that a split exists among some of the Circuits as to whether *prisoners* are covered by the ADA, Defendant fails to address or even acknowledge that there is a distinction between prison employees and prison inmates. There is no reason to suggest that these groups should be treated the same. Moreover, there is no reason to believe that Congress did not intend to cover state prison *employees* under the protections of the ADA. Rather, it would appear that Congress intended to include state prison employees when it failed to indicate otherwise after expressly abrogating the States' Eleventh Amendment immunity. Therefore, the Court finds that state prison correctional officers are covered under the protections of the ADA.

### (2) *The ADA and Sovereign Immunity*

■ It is undisputed that Congress specifically intended to abrogate the States' Eleventh Amendment immunity when it enacted the ADA. *See* 42 U.S.C. § 12202. However, Defendant argues that Congress did not validly abrogate the States' sovereign immunity under the Eleventh Amendment because it was not enacted pursuant to the Fourteenth Amendment. *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 1124, 134 L.Ed.2d 252 (1996). Defendant states that "[t]he ADA was not and could not have been promulgated under Congress' Fourteenth Amendment powers." Defendant, however, fails to elaborate upon this statement.

While the validity of the ADA's abrogation of Eleventh Amendment immunity has not been addressed by the Second Circuit, several other federal courts have done so, with the clear majority holding that the ADA was enacted pursuant to the Fourteenth Amendment. In *Crawford v. Indiana Dep't of Corrections,* 115 F.3d 481 (7th Cir.1997), the Seventh Circuit analyzed the issue and reasoned:

> Like the other antidiscrimination statutes, the Americans with Disabilities Act is an exercise of Congress's power under section 5 of the Fourteenth Amendment (as well as under the commerce clause, which is not

excepted from the Eleventh Amendment) to enact legislation designed to enforce and bolster the substantive provisions of the amendment, in this case the equal protection clause.... Although the state argues that the ADA is outside the scope of section 5, that argument is refuted by our earlier discussion of Congress's concern that disabled persons are victims of discrimination. Invidious discrimination by governmental agencies, such as Indiana's prison system, violates the equal protection clause even if the discrimination is not racial, though racial discrimination was the original focus of the clause. In creating a remedy against such discrimination, Congress was acting well within its powers under section 5....

*Id.* at 486. Other courts have reached similar conclusions. *See Martin v. State of Kansas,* 978 F.Supp. 992, 994 (D.Kan.1997) (summarizing the majority position). The Court is aware of only one opinion since *Seminole Tribe* that has reached the opposite conclusion. *See Nihiser v. Ohio Environmental Protection Agency,* 979 F.Supp. 1168 (S.D.Ohio 1997); *see also Pierce v. King,* 918 F.Supp. 932, 940 (E.D.N.C.1996) (dicta, decided before *Seminole Tribe* ). Thus, because the majority of Courts addressing this issue have held that the ADA was enacted through the authority of the Fourteenth Amendment, and because the ADA seeks as its purpose to eliminate discrimination, which has its roots in the Fourteenth Amendment as well, this Court holds that the ADA was validly enacted pursuant to section 5 of the Fourteenth Amendment.

### III. PLAINTIFF'S MOTIONS

(a) Injunctive Relief

■ Plaintiff moves for injunctive relief asking the Court to order reinstatement and direct New York State to provide him an opportunity to take the DOCS Sergeant's examination, which will not be given again for another six years. Plaintiff specifically requests that he be reinstated to Midstate Correctional Facility in a smoke free post.

■ The ADA provides that the Title VII remedies apply to any person alleging

discrimination on the basis of a disability. *See* 42 U.S.C. § 12117(a). Once a plaintiff proves that an unlawful motive played some part in the employment decision, the plaintiff is entitled to relief including compensatory damages, declaratory judgment and injunctive relief. *See Doane v. City of Omaha*, 115 F.3d 624 (8th Cir.1997). "It is the duty of the district court, after a finding of discrimination, to place the injured party in the position he or she would have been absent the discriminatory actions." *Nord v. U.S. Steel Corp.*, 758 F.2d 1462 (11th Cir.1985) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)). If appropriate, reinstatement is the preferred remedy rather than front pay. *See Selgas v. American Airlines, Inc.*, 104 F.3d 9, 12 (1st Cir.1997). Plaintiff specifically has elected reinstatement over front pay.

After almost a two week trial, the jury found that Defendant intentionally discriminated and retaliated against Plaintiff. When discrimination is found, the purpose of the ADA and the derivative Title VII statutes is to make the Plaintiff as whole as possible. In this case, the Court finds reinstatement to be appropriate. However, simply reinstating Plaintiff to his former position will not be enough to provide Plaintiff with the reasonable accommodation to which he is entitled. The Court therefore orders that Plaintiff be reinstated as a correctional officer at the Midstate Correctional Facility and that he be assigned in such position and to such duties that are consistent with and in compliance with the New York State Clean Indoor Act.

 As stated, Plaintiff has also requested the Court to order the Defendant New York State to provide him an opportunity to take the DOCS sergeant's examination. Courts have on occasion intervened to enjoin "testing," however, this generally has only occurred where the test itself was directly at issue, such as a racially discriminatory test or a test not appropriately deemed to be job related. *See Castro v. Beecher*, 459 F.2d 725 (1st Cir.1972), *Bouman v. Block*, 940 F.2d 1211 (9th Cir.1991), *cert. denied* 502 U.S. 1005, 112 S.Ct. 640, 116 L.Ed.2d 658 (1991). The Court can find no authority to suggest an injunction directing the State to administer a special examination would be appropriate absent a finding that the examination itself was substantively invalid. The Court therefore denies this request.

(b) Back Pay

 Plaintiff requests $47,981.30 in back pay and $8,084.00 in lost vacation time, personal leave, overtime, and medical insurance. Plaintiff calculates these losses back through 1995. Plaintiff does subtract prior amounts received from the state, but includes $13,-302.80 in Workers' Compensation benefits that he expects to receive in the future, which he asserts he will reimburse. Defendant's only response to this specific motion is in an attorney affidavit in opposition to Plaintiff's motion for injunctive relief which states that Plaintiff's motion should be denied because he "failed to adduce any evidence at trial of the amount of back pay he now requests and at no time was the chart referred to at this time ever presented during the trial." (Def.Opp. Aff at 2). Defendant objects in a similar manner to Plaintiff's request for lost time and medical costs. However, Defendant's pretrial memorandum of law states: "If the Plaintiff prevails, he would be entitled to back pay. Because back pay is in the nature of an equitable remedy, the grant of such relief should be reserved to Judge Scullin rather than the jury." (Def. Pretrial Br. at 18). Thus, Defendant was fully aware that this issue was reserved to the Court but nevertheless failed to enter any appropriate arguments or objections. Thus, the Court finds Plaintiff's motion for back pay to be reasonable and appropriate. However, a deduction of $13,380 is appropriate to prevent the double recovery of Worker's Compensation benefits.

## Conclusion

Having considered the parties' submissions, the record, and the applicable law, it is hereby

ORDERED that Defendant's motions for judgment as a matter of law, for a new trial, to vacate or reduce the verdict as excessive, and to dismiss for lack of subject matter jurisdiction are DENIED; it is further

**306**

ORDERED that Defendant's motion to cap the jury verdict at $300,000 is GRANTED; it is further

ORDERED that Plaintiff's motion for an injunction directing reinstatement is GRANTED; it is further

ORDERED that Plaintiff's motion for an injunction directing DOCS provide him an opportunity to take the DOCS Sergeant's examination is DENIED; and it is further

ORDERED that Plaintiff's motion for back pay and lost benefits is GRANTED in the modified amount of $42,762.50.

**IT IS SO ORDERED.**