Anthony A. TANZINI, Plaintiff,

v.

MARINE MIDLAND BANK,
N.A., Defendant.

No. 95–CV–251.

United States District Court,
N.D. New York.

Aug. 4, 1997.

Arthur M. Wisehart, (of counsel), Wisehart & Koch, New York, NY, for Plaintiff.

Martin F. Idzik, James R. Grasso, (of Counsel), Phillips, Lytle, Hitchcock, Blaine & Huber, Jamestown, NY, for Defendant.

## MEMORANDUM, DECISION & ORDER

McAVOY, Chief Judge.

Currently pending before the Court in this action are the parties' post-trial motions. Defendant moves for (1) judgment as a matter of law, or, in the alternative, for a new trial; and (2) a new trial on the issue of compensatory damages and front-pay. Plaintiff moves (1) to amend the judgment to include front pay; and (2) for attorneys' fees, expenses and costs.

## I. BACKGROUND

The factual background of this action is contained in the Court's prior decision on defendant's summary judgment motion, familiarity with which is assumed. *See Tanzini v. Marine Midland Bank*, 952 F.Supp. 937 (N.D.N.Y.1997). A trial on plaintiff's age and disability discrimination claims was held between April 18, 1997 and May 5, 1997 in Binghamton, New York. On May 5, 1997, the jury returned a verdict in plaintiff's favor on his claim that he was terminated because of his age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the New York Human Rights Law ("HRL"), N.Y. Exec. L. § 290 *et seq.* The jury found for defendant on plaintiff's age discrimination claim based upon failure to promote, as well as on plaintiff's claims of disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* and the HRL.

The jury further awarded plaintiff $200,000 in compensatory damages, $80,000 in back pay, $250,000 in front pay, and found that defendant's ADEA violation was willful. Because of the willful violation, the Court doubled the backpay award, and on May 6, 1997, entered judgment for plaintiff in the amount of $360,000.[1]

## II. DISCUSSION

### A. Defendant's Motion for Judgment as a Matter of Law.

#### 1. Standard

The Second Circuit has established the standard for granting judgment as a matter of law. The court in *Mattivi v. South African Marine Corp., "Huguenot"*, 618 F.2d 163 (2d Cir.1980), stated that:

> the trial court cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment

---

1. Because of a dispute as to whether front-pay was an equitable remedy solely within the province of the judge, the Court informed the parties before the case was submitted to the jury that the Court would seek only an advisory verdict from the jury on the front-pay issue. Thus, the Court did not enter judgment on the front-pay award, and ordered the parties to submit briefing on the issue. The matter is resolved in section II(D), *infra*.

for that of the jury. Rather, after viewing the evidence in a light most favorable to the non-moving party (giving the non-movant the benefit of all reasonable inferences), the trial court should grant a judgment n. o. v. only when (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded men could not arrive at a verdict against him.

*Id.* at 167–68; *see Luciano v. Olsten Corp.*, 110 F.3d 210, 214 (2d Cir.1997); *Samuels v. Air Transport Local 504*, 992 F.2d 12, 14 (2d Cir.1993); *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 688–89 (2d Cir.1983).[2] Rule 50 of the Federal Rules of Civil Procedure governs the procedure for granting judgment as a matter of law by motion made before the jury retires pursuant to Rule 50(a), or motion after the jury has spoken pursuant to Rule 50(b). Fed.R.Civ. P. 50; see Samuels, 992 F.2d at 14.

### 2. The Standard Applied

Defendant first argues that no reasonable jury could conclude from the evidence presented at trial that age was a determinative factor in defendant's decision to discharge plaintiff.

It is now well-established in this Circuit that the familiar Title VII burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) also applies to claims brought pursuant to the ADEA. *Levin v. Analysis & Technology, Inc.*, 960 F.2d 314, 316 (2d Cir.1992); *Hollander v. American Cyanamid, Co.*, 895 F.2d 80, 83 (2d Cir.1990); *Montana v. First Federal Savings & Loan of Rochester*, 869 F.2d 100, 103 (2d Cir.1989); *Pena v. Brattleboro Retreat*, 702 F.2d 322, 323–24 (2d Cir.1983).

Under this framework, plaintiff initially must establish the elements of a *prima facie* case by showing: 1) he is a member of the protected age group; 2) he was qualified for his position; 3) he was discharged; and 4) that his discharge occurred under circumstances giving rise to an inference of age discrimination. *Burger v. New York Institute of Technology*, 94 F.3d 830, 832 (2d Cir.1996); *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 203 (2d Cir.1995). If plaintiff establishes these elements, the burden of production then shifts to the employer to articulate, " 'through the introduction of admissible evidence,' reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) (quoting *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094). If the employer meets this burden, the presumption of discrimination arising from plaintiff's *prima facie* case "drops out of the picture." *Hicks*, 509 U.S. at 511, 113 S.Ct. at 2749. "[T]he onus [then] returns to the plaintiff who ultimately must demonstrate by a preponderance of the evidence that the stated reasons are merely a pretext for discrimination," *Levin*, 960 F.2d at 317 (citing *Burdine*, 450 U.S. at 255–56, 101 S.Ct. at 1094–95), and that age was the real reason for the discrimination. *Hicks*, 509 U.S. at 507–08, 113 S.Ct. at 2747–48. Throughout this sequence of proof, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

Defendant concedes that plaintiff established a *prima facie* case of age discrimination at trial. (Def. Mem. in Support at 8). Moreover, the Court found that defendant at trial articulated a non-discriminatory reason for plaintiff's termination. (Transcript ["Tr."] at 1105). Thus, defendant's only argument in this regard is that no jury could

---

**2.** While the 1991 amendments to Rule 50 abandoned the terms "directed verdict" and "judgment not withstanding the verdict" in favor of the encompassing "judgment as a matter of law" terminology, the standard for granting the motions was not altered. *See* Fed.R.Civ.P. 50 Advisory Committee's note, 1991 Amendment.

reasonably conclude that defendant's proffered reason for plaintiff's termination was pretextual and that age discrimination was the real reason.

As to pretext, defendant argues that plaintiff's mere disagreement with Mr. Fornorala's decision to terminate him to make way for Ms. Majewski, a younger employee, is insufficient to show that Fornorola's decision was a pretext for discrimination. In particular, defendant relies upon plaintiff's testimony to the effect that he disagreed with Fornorala's use of "subjective data" in reviewing the branch managers to decide which one should be terminated. (Tr. 1549–64; 1601–16; *see* Grasso Aff. Ex. D). If the Court shared defendant's myopic view of the evidence of pretext, it would readily agree with defendant. Such is not the case.

First, plaintiff presented evidence at trial casting suspicion upon Fornorola's professed reliance upon the handwritten chart. Plaintiff was listed for termination under the reduction in force as early as October of 1992; in the same document, Majewski was listed for transfer. (Pl.Ex. 22). Patrick O'Leary testified that at the meeting during which Exhibit 22 was created, it was decided that "Mr. Tanzini was going to be RIF'd." (Tr. at 802). Thus, the jury might reasonably have determined that the decision to terminate plaintiff had been made well before Fornorola allegedly created the chart for the 1992 evaluations, which themselves were not prepared until January of 1993. (Pl.Exs.63–79). Hence, plaintiff's termination may have been a *fait accompli* at the time of Fornorola's alleged "revisiting" of the chart in connection with the RIF, in late December of 1992 or early January of 1993. (Tr. at 541–42).

Moreover, the Court noted in its prior decision that the chart itself is "exceptionally confusing," and that it illustrates that "many younger ... employees with the same or lower ratings were not terminated." *Tanzini*, 952 F.Supp. at 943. Indeed, the slapdash nature of the handwritten chart itself, when compared with defendant's otherwise rigid, formulaic approach to performance evaluations (*see* Pl.Ex. 63–79), lends further credence to plaintiff's theory of pretext. Judg-

ment as a matter of law is not warranted on this basis.

In arguing that no reasonable jury could conclude that age was a determinative factor in defendant's decision to terminate plaintiff, defendant argues that since plaintiff was promoted and subsequently terminated by the same person, and was a member of the protected class at both times, a strong inference against discrimination arises. *See, e.g., Buhrmaster v. Overnite Transp. Co.,* 61 F.3d 461, 463 (6th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 785, 133 L.Ed.2d 736 (1996); *Rand v. CF Industries, Inc.* 42 F.3d 1139, 1147 (7th Cir.1994); *LeBlanc v. Great American Ins. Co.,* 6 F.3d 836, 847 (1st Cir.1993), *cert. denied,* 511 U.S. 1018, 114 S.Ct. 1398, 128 L.Ed.2d 72 (1994); *Proud v. Stone,* 945 F.2d 796, 797 (4th Cir.1991). Defendant's reliance on such an inference, however, presumes that the jury found that plaintiff was promoted and terminated by Fornorola. Such a finding, however, was not compelled by the evidence. As mentioned above, evidence was presented that the initial decision to terminate plaintiff was made at an October 22, 1992 meeting. (Tr. at 802; Pl.Ex. 22). However, Fornorola testified that he was not present at the meeting:

Q. It was not—you were not at—were you at any meetings in October when it was decided to terminate Mr. Tanzini?

A. No. I was in no meetings in October where it was decided to terminate Tony.

(Tr. 336). Other testimony indicated that upper management approved the decision to terminate plaintiff. (Tr. 961). Since a factual issue was present as to who was involved in plaintiff's termination, the jury was not compelled to draw an inference against discrimination.

■ Defendant next argues that the age profile of the branch managers employed by defendant at the time of plaintiff's termination negates any finding of discriminatory intent. Specifically, defendants point out that two of the 18 managers remaining after plaintiff's termination were older than plaintiff (Finch, 52; Swanson, 49) and 10 were

over age 40. (See Def. Ex. 39)[3] However, "the *McDonnell Douglas* analysis is neither 'rigid' nor 'mechanized' and ... the primary focus is always whether an employer treats an employee less favorably than other employees for an impermissible reason." *Montana*, 869 F.2d at 104. Plaintiff presented evidence that he was treated less favorably than younger employees with worse evaluations. For example, at the same time Majewski was being moved into a Branch Manager position, another Branch Manager, who was 35 years old, was demoted to the position of Branch Platform Officer, rather than being terminated. (Pl.Ex. 88; Tr. at 435). Rebertha Fraser, a 37 year old Branch Manager, also was demoted rather than terminated. (Pl.Ex. 88; Tr. at 441). Moreover, plaintiff, who presented evidence of consistently good evaluations (*see, e.g.,* Tr. 55; Pl.Ex. 36–38, 40), was the only Branch Manager terminated in his region as part of the reduction in force. This and other evidence, combined with the evidence of pretext presented by plaintiff, reasonably might have led a jury to conclude that age was a determinative factor in plaintiff's termination. *See, e.g. Hicks,* 509 U.S. at 511, 113 S.Ct at 2749 ("the factfinder's disbelief of the reasons put forward by defendant ... may, together with the elements of a prima facie case, suffice to show intentional discrimination."); *Fisher v. Vassar College,* 114 F.3d 1332, 1337 (2d Cir.1997) ("A showing that the defendant's proffered reasons for the adverse employment action is not the real reason may serve as evidence that the defendant intentionally discriminated.").

In sum, because defendant has failed to establish either a complete lack of evidence to support the verdict, or an overwhelming amount of evidence in its favor, the motion for judgment as a matter of law is denied.

## B. Defendant's Motion for a New Trial

### 1. The Standard Under Rule 59:

■ A less stringent standard applies to a motion to set aside the verdict and for a new trial pursuant to Rule 59(a). "A trial court should grant such a motion when convinced that the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice." *Katara v. D.E. Jones Commodities, Inc.,* 835 F.2d 966, 970 (2d Cir. 1987); *see Newmont Mines Ltd. v. Hanover Ins. Co.,* 784 F.2d 127, 132 (2d Cir.1986). Furthermore, the Court may weigh conflicting evidence and need not view such evidence in the light most favorable to the nonmoving party. *See Song v. Ives Laboratories, Inc.,* 957 F.2d 1041, 1047 (2d Cir.1992); *Iannone v. Harris,* 941 F.Supp. 403, 409 (S.D.N.Y. 1996). A trial judges's disagreement with the jury's verdict alone, however, is insufficient reason to grant the motion for a new trial. *Mallis,* 717 F.2d at 691; *see Saloomey v. Jeppesen & Co.,* 707 F.2d 671, 679 (2d Cir.1983).

It is in light of this standard that the Court examines defendant's motion for a new trial.

### 2. The Standard Applied

In it motion for a new trial, defendant relies upon the same arguments regarding pretext and discrimination set forth in support of its motion for judgment as a matter of law. Upon review of the evidence, however, and in light of the Court's previous discussion, the Court cannot say that it is "quite clear that the jury has reached a seriously erroneous result." *Bevevino v. Saydjari,* 574 F.2d 676, 684 (2d Cir.1978).

■ Defendant also argues that it is entitled to a new trial based upon the Court's denial of defendant's same-actor inference charge request. Prior to the case's submission to the jury, defendant requested the following charge:

You have heard the evidence that it was Mr. Fornorola who promoted Mr. Tanzini to the position of Branch Manager for the

---

**3.** Defendant is correct in arguing that no inference of discrimination may be drawn from plaintiff's replacement by Majewski, who was only 4 1/2 years younger than plaintiff. *See, e.g., O'Connor v. Consolidated Coin Caterers Corp.,* 517 U.S. 878, ——, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996) ("[i]n the age-discrimination context, [an inference that an employment decision was based on a discriminatory criterion] can not be drawn from the replacement of one worker with another worker insignificantly younger.").

Union–Endicott Branch in September 1991 and that it was also Mr. Fornorola who terminated him from that position only 17 months later on February 9, 1993. At the time Mr. Fornorola promoted Mr. Tanzini, Mr. Fornorola knew that Mr. Tanzini was 45 years old and that he walked with a limp. When Mr. Fornorola terminated Mr. Tanzini 17 months later, Mr. Tanzini was 46 years old. You may infer from the fact that Mr. Fornorola knew Mr. Tanzini was 45 years old and walked with a limp when he promoted Mr. Tanzini and that Mr. Fornorola terminated Mr. Tanzini only 17 months later, that neither age nor disability was a motivating factor in Mr. Fornorola's decision to terminate Mr. Tanzini.

(Grasso Aff. Ex. I). As is apparent from the language used, rather than requesting a simple charge on a permissive inference that might be drawn, defendant requested that the Court validate defendant's theory of the case in the jury charge. As discussed above, factual issues were present as to who was involved in plaintiff's termination. The requested charge, however, assumes that only Fornorola was involved.

Moreover, the Second Circuit has yet to rule on the validity of the inference, *see Brennan v. Bausch & Lomb, Inc.*, 950 F.Supp. 545, 551 (E.D.N.Y.1997), which in any event generally has been applied only where the inference bolstered the employer's legitimate reason for the adverse action, in particular, deficient performance. *See Padilla v. Buffalo State College Foundation*, 958 F.Supp. 124, 127–28 (W.D.N.Y.1997), and cases cited therein. Given the factual disputes regarding plaintiff's termination, the presumptive nature of the requested charge, and the unsettled status of the inference in this Circuit, the Court did not err in denying the requested charge.

### 3. Compensatory Damages

Defendant also requests a new trial on the issue of compensatory damages, or, in the alternative, remittitur to $5,000.

■■■■■ "If a district court finds that a verdict is excessive, it may order a new trial,

a new trial limited to damages, or, under the practice of remittitur, may condition a denial of a motion for a new trial on the plaintiff's accepting damages in a reduced amount." *Tingley Systems, Inc. v. Norse Systems, Inc.*, 49 F.3d 93, 96 (2d Cir.1995) (citing *Phelan v. Local 305 of the United Ass'n of Journeymen and Apprentices of the Plumbing & Pipefitting Indus.*, 973 F.2d 1050, 1064 (2d Cir. 1992), *cert. denied*, 507 U.S. 972, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993)). Remittitur is "the process by which a court compels a plaintiff to choose between reduction of an excessive verdict and a new trial." *Earl v. Bouchard Transportation Co.*, 917 F.2d 1320, 1328 (2d Cir.1990) (quoting *Shu–Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 49 (2d Cir.1984)).

■■■■■ Plaintiff and defendant disagree over the standard to be applied in determining whether the compensatory damage verdict is excessive. A conflict arises because the jury necessarily awarded these damages under the HRL; emotional damages are not available under the ADEA. *See Johnson v. Al Tech Specialties Steel Corp.*, 731 F.2d 143, 147 (2d Cir.1984). It is now clear, however, that a federal district court must apply New York state law in determining whether damage awards on diversity claims are excessive. *Gasperini v. Center for Humanities, Inc.*, — U.S. —, —————, 116 S.Ct. 2211, 2224–25, 135 L.Ed.2d 659 (1996); *Consorti v. Armstrong World Indus., Inc.*, 103 F.3d 2, 4 (2d Cir.1996); *Bunt v. Altec Indus., Inc.*, 962 F.Supp. 313, 320 (N.D.N.Y.1997) (Hurd, M.J.); *Kukla v. Syfus Leasing Corp.*, 928 F.Supp. 1328, 1336 (S.D.N.Y.1996). The relevant law is set forth in C.P.L.R. § 5501(c) (McKinney 1995). That section provides in part as follows:

> In reviewing a money judgment ... in which it is contended that the award is excessive or inadequate and that a new trial should have been granted unless a stipulation is entered to a different award, the appellate division shall determine that an award is excessive or inadequate if it deviates materially from what would be reasonable compensation.

*Id.*[4] In determining whether a jury award is excessive under this standard, New York courts look to verdicts in similar cases. *Gasperini*, —— U.S. at ——, 116 S.Ct. at 2218 (citing *Leon v. J & M Peppe Realty Corp.*, 190 A.D.2d 400, 596 N.Y.S.2d 380, 389 (1st Dep't 1993); *Johnston v. Joyce*, 192 A.D.2d 1124, 596 N.Y.S.2d 625, 626 (4th Dep't 1993)).

◼ In opposing defendant's motion, plaintiff relies extensively on testimony regarding the extent of defendant's discriminatory acts and wrongs. (See Pl. Mem. in Opp. at 18–19). Such testimony, while probative of discrimination itself, does not itself prove emotional damages. *See, e.g., McIntosh v. Irving Trust Co.*, 887 F.Supp. 662, 665 (S.D.N.Y.1995) ("it does not follow that simply because there was retaliation, there must be an award of compensatory damages; rather, the compensatory damages must be proven and not presumed."); *Northern Orchard Co., Inc. v. State Division of Human Rights*, 161 A.D.2d 846, 555 N.Y.S.2d 892, 893 (3d Dep't) ("Although an award for mental anguish may be based solely on the complainant's testimony, damage may not be presumed because of the nature of the discrimination itself."), *appeal denied*, 76 N.Y.2d 713, 563 N.Y.S.2d 769, 565 N.E.2d 518 (1990). Rather than evidence of discrimination, plaintiff must provide proof that he "in fact suffered mental anguish or humiliation[.]" *Cullen v. Nassau County Civil Serv. Comm'n*, 53 N.Y.2d 492, 442 N.Y.S.2d 470, 473, 425 N.E.2d 858, 861 (1981).

The evidence of plaintiff's injuries as a result of defendant's discrimination consisted of testimony from plaintiff and his wife. In particular, plaintiff relies upon his own testimony that he did not leave the house for one week following his termination, and that he was "in a state of shock." (Tr. at 98). Plaintiff also testified as follows:

Q. You stayed in a state of shock as a result of what?

A. From the termination.

Q. Did you have other symptoms that you noticed?

A. Oh, yes. Loss of memory is one. Names and faces of people that I've worked with for years, the come up in front of me and it takes me a while to remember their names. I feel very—I've had a loss of memory. I've had sleepless nights and with these sleepless nights I lie awake in the middle of the night thinking about, you know, my lifestyle has really considerably changed from working at Marine Midland Bank to working at my new employer, now mainly because of the level of income I'm making. So with the sleepless nights come headaches and nervousness. Short-tempered, where I used to be a very carefree individual. But little things set me off now and I think it's all a result of what happened at that session.

(Tr. at 99). Plaintiff additionally testified that his termination was a "very traumatic experience." (Tr. at 99).

Plaintiff's wife testified that plaintiff became more argumentative after his termination, and suffered sleepless nights. (Tr. at 623). Patrick O'Leary also testified that plaintiff was "in shock" and "quite startled and upset by the news" of his termination. (Tr. at 908). Notably, however, plaintiff presented no evidence detailing the duration or magnitude of his emotional injuries, nor any evidence of medical or psychological treatment. *See McIntosh*, 887 F.Supp. at 665; *Cosmos Forms, Ltd. v. State Div. of Human Rights*, 150 A.D.2d 442, 541 N.Y.S.2d 50, 51 (2d Dep't 1989).

A review of comparable cases supports defendant's argument that the jury's award for emotional damages in the present case is excessive. For example, in *McIntosh*, Judge Koeltl reduced a $219,428.00 compensatory damage award under the HRL to $20,000. *Id.* at 669.[5] The plaintiff in *McIntosh* testified that defendant's retaliatory acts made him feel "humiliated," "shocked" and "angry." *Id.* at 664. The plaintiff also testified to his humiliation and embarrassment, and that he suffered physical symptoms such as

---

**4.** Though directed at the appellate divisions, § 5501(c) has been held to apply to trial courts as well. See *Gasperini*, —— U.S. at ——, 116 S.Ct. at 2221.

**5.** Notably, Judge Koeltl determined that the verdict was excessive under the more stringent "shocks the conscience" standard. *McIntosh*, 887 F.Supp. at 664.

weakness in his legs, stomach cramps and chest pains, forcing him to visit a doctor on one occasion. *Id.* Plaintiff further testified that upon being terminated, he "was devastated," angry and depressed. *Id.* Judge Koeltl concluded that "[b]ecause the plaintiff introduced such sparse evidence with respect to the magnitude and duration of any emotional injury or mental distress that he sustained, the jury was forced to speculate in awarding him compensatory damages." *McIntosh*, 887 F.Supp. at 665.

Similarly, in *Quality Care v. Rosa*, 194 A.D.2d 610, 599 N.Y.S.2d 65 (2d Dep't 1993), plaintiff testified that she was " 'shock[ed]' and 'devastated' by her termination, that she was 'in a real pickle,' and that she felt bad." *Id.* 599 N.Y.S.2d at 66. The Second Department found that "in the absence of any evidence of the duration of [complainant's] condition, its severity or consequences, and in the absence of evidence of any medical treatment[,]" a $10,000 award for emotional damages required remittitur to $5,000. *Id.* This holding is consistent with a number of cases under the HRL dealing with "garden variety emotional distress," *Luciano v. Olsten Corp.*, 912 F.Supp. 663, 673 (E.D.N.Y.1996), *aff'd*, 110 F.3d 210 (2d Cir.1997), in which the awards ranged from $5,000 to $15,000. *See, e.g., Binder v. Long Island Lighting Co.*, 847 F.Supp. 1007, 1028 (E.D.N.Y.1994) (pain and suffering award of $497,738 reduced to $5,000), *rev'd in part on other grounds*, 57 F.3d 193 (2d Cir.1995); *Borja–Fierro v. Girozentrale Vienna Bank*, 1994 WL 240360 at *3–4 (S.D.N.Y.) (reducing $185,000 mental anguish award to $15,000 under "shocks the conscience" standard); *New York State Office of Mental Retardation and Developmental Disabilities v. State Div. of Human Rights*, 183 A.D.2d 943, 583 N.Y.S.2d 580 (3d Dep't 1992) (reducing award from $75,000 to $7,500); *Pioneer Group v. State Div. of Human Rights*, 174 A.D.2d 1041, 572 N.Y.S.2d 207, 208 (4th Dep't 1991) (finding $10,000 award excessive as a matter of law, reducing

to $5,000); *Cosmos Forms, Ltd*, 541 N.Y.S.2d at 51 (reducing $35,000 award to $5,000).[6]

Moreover, cases upholding higher awards almost invariably involved circumstances far more egregious than those in the present case. In *New York City Transit Auth. v. State Div. of Human Rights*, 181 A.D.2d 891, 581 N.Y.S.2d 426 (2d Dep't), *appeal denied*, 80 N.Y.2d 762, 592 N.Y.S.2d 671, 607 N.E.2d 818 (1992), the Second Department upheld a $450,000 award for compensatory damages in a sexual harassment case under the HRL. In that case, the complainant suffered four intentional instances of sex discrimination relating to her pregnancy, and testified that she "suffered anguish, guilt, depression, and anger at the time of each occurrence, and that her mental anguish persisted . . . [for] a period of more than six years." *Id.* 581 N.Y.S.2d at 429. Moreover, the court found sufficient evidence that such anguish would persist for the remainder of the complainant's life. *Id.*[7] The court was at a loss to find any New York case involving "the type of prolonged, intentional sex discrimination committed by the NYCTA in this case, or any case where the magnitude of the psychic injury was comparable to that suffered by the complainant . . .". *Id.*

In *Shea v. Icelandair*, 925 F.Supp. 1014 (S.D.N.Y.1996), the district court reduced a $250,000 jury award for compensatory damages in an age discrimination case under the HRL to $175,000. In that case, plaintiff presented (1) expert medical testimony that the stress brought on by defendant's discriminatory acts aggravated the symptoms of plaintiff's Parkinson's disease and brought on cardiac symptoms, *Id.* at 1022–24; and (2) "compelling evidence of his emotional anguish and humiliation," including detailed testimony by plaintiff of the effect his demotion had on his day-to-day living. *Id.* at 1024–25. The court found that the aggravation of plaintiff's physical symptoms and the severity of the emotional distress suffered by

---

**6.** *See also Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1190 (2d Cir.1992) (upholding $18,-000 award under HRL where plaintiff testified that losing his job was " 'like a divorce, your wife died or state of shock' ").

**7.** The hearing judge in *Matter of New York City Transit Auth.* described the wrongdoing in the case as " 'the most shocking instance of abuse of an employee by an employer' in his 20–year experience with the Division of Human Rights." *Id.* 581 N.Y.S.2d at 429.

him set the case apart from cases of " 'garden variety emotional distress.' " *Shea*, 925 F.Supp. at 1025 (quoting *Luciano*, 912 F.Supp. at 663).

*Luciano* itself involved facts similar to those in the present case. In *Luciano*, the plaintiff

> was a high-level career woman who, instead of being promoted to Vice President as promised ... was terminated, as the jury found. There was testimony that as a result of the termination Luciano was hurt, shocked, upset, overcome with sadness and depression, that she cried worried about finances, had trouble sleeping and eating and felt purposeless.

*Id.* at 673–74. The district court upheld as reasonable an award of $11,400 for plaintiff's emotional damages. *Id.* at 674.

■ It is clear from these cases and from the evidence adduced by plaintiff at trial that the $200,000 award of compensatory damages in the present case "deviates materially from what would be reasonable compensation." C.P.L.R. 5501(c). For this reason, a new trial will be held on the issue of compensatory damages unless plaintiff accepts a remittitur of $170,000, reducing the compensatory damages award to $30,000.[8]

## C. Plaintiff's Motion to Alter or Amend the Judgment

Because the parties initially disagreed whether the issue of front pay in this case was an equitable remedy to be determined by the Court, the issue was submitted to the jury with the caution to the parties that any front pay award may be taken as advisory only. *See. e.g., Dominic v. Consolidated Ed-*ison Co. of New York, Inc.*, 652 F.Supp. 815, 819 (S.D.N.Y.1986) (trial court submitted issue of front pay to jury "while expressly reserving any decision on the propriety of so doing for post-trial proceedings"), *aff'd*, 822 F.2d 1249 (2d Cir.1987).

In finding that defendant had discriminated against plaintiff on the basis of age under the HRL, the jury awarded plaintiff $250,000 in front pay. The Court did not enter judgment on the award, but rather requested that the parties brief the issue of whether the jury's determination should stand. Subsequently, plaintiff moved to amend the judgment to include the front pay award.

The parties now agree, as does the Court, that while an award of front pay is an equitable remedy for the Court under the ADEA, *Saulpaugh v. Monroe Community Hosp.*, 4 F.3d 134, 145 (2d Cir.1993), *cert. denied*, 510 U.S. 1164, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994), such damages are a legal remedy properly determinable by the jury under the HRL. *See Tyler v. Bethlehem Steel Corp.*, 958 F.2d 1176, 1189 (2d Cir.), *cert. denied*, 506 U.S. 826, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992); *Murphy v. American Home Products Corp.*, 136 A.D.2d 229, 527 N.Y.S.2d 1, 4 (1st Dep't 1988). Thus, plaintiff's motion to amend the judgment is granted, and judgment shall be entered on the jury's front-pay award in the amount of $250,000.

## D. Defendant's Cross–Motion for a New Trial on Front Pay

Defendant, however, cross-moves for a new trial on the issue of front pay damages, or, in the alternative, remittitur to $12,-

---

8. Plaintiff's primary argument against remittitur is that reduction of the jury award would offend his right to a jury trial under the New York State Constitution. The New York Court of Appeals addressed an analogous argument long ago, in *O'Connor v. Papertsian*, 309 N.Y. 465, 131 N.E.2d 883 (1956), finding that conditioning a new trial on a party's acceptance of remittitur does not run afoul of the New York Constitution's guarantee of a jury trial:

> At the end of a jury trial, when the defendant moves to set aside the verdict as excessive and requests a new trial, the court may grant such a motion. Upon appeal the appellate court may reverse the trial court upon condition that

the plaintiff agree to take a lesser sum. It could be maintained that the defendant has been thereby deprived of a jury trial by the stipulation of the plaintiff, but such contention was raised before us in [*Herrman v. United States Trust Co.*, 221 N.Y. 143, 116 N.E. 865 (1917)] and we held that it did not deprive the defendant of a trial by jury.

*O'Connor*, 309 N.Y. at 469, 131 N.E.2d 883. Conditioning the denial of a new trial on plaintiff's acceptance of remittitur keeps plaintiff's Seventh Amendment rights intact as well. *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 914–15 (2d Cir.1997).

500.00.[9] Defendant first argues that no fact-finder reasonably could predict that plaintiff has no reasonable prospect of obtaining comparable alternative employment. The Second Circuit addressed a similar argument *Padilla v. Metro–North Commuter Railroad,* 92 F.3d 117 (2d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2453, 138 L.Ed.2d 211 (1997). In that case, plaintiff remained in the defendant's employ at a lower salary after his demotion. *Id.* at 125. The defendant argued that plaintiff was not entitled to front pay because by remaining in the lower position, he failed to make reasonable efforts to mitigate his damages. *Id.* The court rejected this line of attack:

> Metro-North argues that Padilla's efforts at mitigation were insufficient because he failed to look for a position that was comparable to his former position as superintendent of train operations and instead simply remained at Metro–North as a train dispatcher. However, Metro–North bore the burden of showing that comparable positions were available for Padilla. *See* [*Clarke v. Frank,* 960 F.2d 1146, 1152 (2d Cir.1992) ] ("The employer bears the burden of proving that suitable work existed, and that the employee did not make reasonable efforts to obtain it."). Metro–North failed to provide any evidence that suitable work existed for Padilla . . .

*Padilla,* 92 F.3d at 125. Defendant in the present case failed to offer any evidence that a position comparable to that he held with defendant (and which Joyce Majewski now holds at a salary of $54,000) was available.

Defendant next argues that the award of front pay is speculative and excessive. In terms of speculation, defendant argues that the jury awarded plaintiff front pay for twenty years, a duration that defendant asserts is speculative on its face. Specifically relying on *Whittlesey v. Union Carbide Corp.,* 742

F.2d 724 (2d Cir.1984), defendant argues that a front pay award for longer than twenty years is necessarily speculative. The Second Circuit has addressed and rejected this argument as well, observing that "front pay awards always involve some degree of speculation[.]" *Tyler,* 958 F.2d at 1189. Thus, even if the jury did award plaintiff front pay for 20 years, such a duration is not speculative on its face.

■ In terms of excessiveness, there is a considerable dearth of jury verdicts dealing with front pay with which we might compare the present award. In *Tyler,* however, the Second Circuit upheld a front pay award of $667,000 under the HRL, placing particular emphasis on the fact that such awards under the state statute are within the discretion of the jury:

> In view of the fact that all money damage awards under [the HRL] are legal remedies, *compare Murphy* [527 N.Y.S.2d at 2] *with Whittlesey,* 742 F.2d at 728 (front pay under the ADEA is equitable relief), it was entirely proper for the jury—armed with extensive testimony about future earnings and chances of employment in the steel industry—to arrive at the damage award that it did.

*Tyler,* 958 F.2d at 1189. This Court reaches the same conclusion with respect to the front pay awarded to plaintiff. The jury heard credible testimony from plaintiff's supervisor that plaintiff has risen as far as he can in his present position. The jury also had evidence before it of the current salary of Ms. Majewski, plaintiff's replacement, and of the salary and benefits she might make in the future. Based upon such evidence, the Court cannot say that the $250,000 front pay awards materially deviates from reasonable compensation.

---

9. Plaintiff argues that defendant's cross-motion should be denied as untimely. Fed.R.Civ.P. 59(b) provides that "[a]ny motion for a new trial shall be filed no later than 10 days after entry of the judgment." Judgment having been entered on May 7, 1997, plaintiff argues that defendant's cross-motion, dated June 12, 1997, was filed beyond the 10 day period.

Plaintiff ignores the fact that judgment was never entered on the jury's front pay award.

Thus, having granted plaintiff's motion to amend the judgment to include the jury's front pay award, defendant would be entitled to a new ten day period upon entry of the amended judgment, since the amendment involved a substantive change. *See* CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAYKANE, FEDERAL PRACTICE AND PROCEDURE § 2812 at 136 (1995) (citing *Cornist v. Richland Parish School Bd.,* 479 F.2d 37 (5th Cir.1973)).

For these reasons, defendant's motion for a new trial on the issue of front pay is denied.

### E. Plaintiff's Motion for Attorneys' Fees

Plaintiff moves for attorneys' fees totaling $319,032.50, and expenses totaling $26,853.43.

 A party who prevails in an action brought pursuant to the ADEA is entitled to recover reasonable attorneys' fees. *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 913 (2d Cir.1997); *Hagelthorn*, 710 F.2d at 86; *see also* 29 U.S.C. § 626(b) (1994) (incorporating by reference 29 U.S.C. § 216(b) (1994)). In order to determine a reasonable fee, the court must first establish a "lodestar" figure by multiplying the number of hours reasonably expended by the party's attorneys by a reasonable hourly rate. *Blum v. Stenson*, 465 U.S. 886, 888, 104 S.Ct. 1541, 1543–44, 79 L.Ed.2d 891 (1984); *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).[10] The operative term is "reasonable".

#### 1. Hourly Rate

 To determine hourly rate, the Supreme Court has adopted a marketplace model, *Blum*, 465 U.S. at 896, 104 S.Ct. at 1547–48, which contemplates "the normal rate in the legal community for substantially similar work by competent practitioners." *Fiacco v. Rensselaer*, 663 F.Supp. 743, 745 (N.D.N.Y.1987); *see Levy v. Scranton*, 1992 WL 265936 (N.D.N.Y.1992); *Auburn Enlarged City School District v. Coastal Environmental Safety and Control, Inc.*, 1990 WL 19139 (N.D.N.Y.1990). The district court also considers other rates which have been awarded in similar cases in the same district. *Levy, supra*, at 3; *Miner v. City of Glens Falls*, 1992 WL 349668 (N.D.N.Y. 1992), *aff'd*, 999 F.2d 655 (2d Cir.1993); *Fiacco*, 663 F.Supp. at 745; *Auburn City School District*, 1990 WL 19139 at *2.

In *Haley v. Pataki*, 901 F.Supp. 85 (N.D.N.Y.1995), *aff'd*, 106 F.3d 478 (2d Cir. 1997), this Court applied the prevailing mar-

ket rates found within the Northern District of New York in its calculation of an award of attorneys' fees as follows:

| Attorney | Type of Work | Hourly Rate |
|----------|--------------|-------------|
| Partner | Legal | $150 |
| Associate | Legal | $100 |

*Id.* at 89. Despite these figures, plaintiff's lead counsel, Arthur Wisehart, requests hourly fees for he and his associates in the following amounts: Wisehart, $325; Michael H. Prince, $175; Heather R. Boshak, $160; Brooks Clark and John Lagan, $125; Christopher Runge, Jason Pascal and Sean Yuen, $75.

In support of these rates, Mr. Wisehart cites to *Helbrans v. Coombe*, 890 F.Supp. 227 (S.D.N.Y.1995) and *Marfia v. T.C. Ziraat Bankasi, New York Branch*, 903 F.Supp. 463, 474 (S.D.N.Y.1995), *vacated*, 100 F.3d 243 (2d Cir.1996), as recent decisions of "this" Court approving such rates. This Northern District Court frankly is puzzled by this assertion. Similarly, the fact that this case originally was filed in the Southern District and transferred to this Court by Judge Schira Scheindlin is of no import. If it were, the Administrative Office might well see an increased number of filings in the Southern District by Binghamton lawyers. *See Polk v. New York State Dep't of Correctional Servs.*, 722 F.2d 23, 25 (2d Cir.1983).

 Recognizing, however, that nearly two years have passed since this Court's decision in *Haley*, and given defendant's concession to slightly higher rates, the Court will apply the following hourly rates: Wisehart, $170; Prince, $120; Boshak, Clark and Lagan, $100; Runge, Pascal and Yuen, $75.

#### 2. Reasonable Hours

 In order to recover attorneys' fees, the party must support the application with contemporaneous time records of work performed. *See Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir.1986); *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983). Plaintiff's counsel have submitted such records, and

---

**10.** "The standards set forth in [*Hensley*] are generally applicable to all cases in which Congress has authorized an award of fees to a 'prevailing party.'" *Hensley*, 461 U.S. at 433, n. 7, 103 S.Ct. at 1939, n. 7.

request compensation for a total of 1,553.15 hours.

■ While defendant has submitted a host of objections to the hours requested by plaintiff, the Court's review of the papers submitted by the parties leads it to conclude that only a few of these objections merit discussion. *See, e.g., Lunday v. City of Albany,* 42 F.3d 131, 134 (2d Cir.1994) (district court not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items."). First, defendant correctly points out that many of the entries on plaintiff's counsel's billing sheets are vague and redundant. For example, the records contain numerous entries for "conf.", "review of file", "organize files" and other imprecise tasks. As Mr. Wisehart has been instructed on a prior occasion, "[a]lthough the Court does not require that a fee applicant's records be extraordinarily detailed, the records must identify 'the general subject matter of [the claimed] time expenditures.'" *Kirsch v. Fleet Street, Ltd.,* 1996 WL 695687 at *5 (S.D.N.Y.) (quoting *Chambless v. Masters, Mates & Pilots Pension Plan,* 1988 WL 80170 at *5 (S.D.N.Y.)). Several of plaintiff's counsel's entries fail to meet this standard, "'complicat[ing] the court's task of assessing reasonable attorney's fees[.]'" *Id.* For these reasons, a ten percent reduction is merited.

Defendant also contends that the hours expended by plaintiff's counsel in opposing the motion to transfer the action to this district should be disallowed. The Court agrees. The only reason for filing this case in the Southern District apparent from the record is that Mr. Wisehart's primary office is located in New York City. Moreover, Judge Scheindlin's remark that the venue motion was a "close case" must be taken in context. To the extent that defendant sought transfer to the Northern District, the venue question may have been close, since some of the witnesses and defendant's headquarters were located in the Western District. (Idzik Aff. Ex. 6 at 26–27). The Court can emphatically conclude, however, from both the record of Judge Scheindlin's decision, and from presiding over this trial, that this action had little, if any, connection with the Southern District.

For these reasons, the Court will reduce plaintiff's fee request in the following amount:

| Attorney | Hours | | Rate | Total |
|----------|-------|---|------|-------|
| Wisehart | 37.25 | @ | $170 | $ 6,332.50 |
| Runge | 91.75 | @ | $75 | $ 6,881.25 |
| Prince | 9.5 | @ | $120 | $ 1,140.00 |
| | | | Total: | $14,353.50 |

Taking these adjustments into account, as well the ten percent across the board reduction for counsel's imprecise entries, the Court arrives at a lodestar figure of $156,305.63.

### 3. Adjustments to Lodestar

Defendant next argues that the lodestar figure should be reduced to account for plaintiff's unsuccessful breach of contract, ERISA, and failure to promote claims.

■ The lodestar figure is accorded a strong presumption of reasonableness. *City of Burlington v. Dague,* 505 U.S. 557, 561–63, 112 S.Ct. 2638, 2641, 120 L.Ed.2d 449, (1992); *Grant v. Martinez,* 973 F.2d 96, 101 (2d Cir.1992), *cert. denied,* 506 U.S. 1053, 113 S.Ct. 978, 122 L.Ed.2d 132 (1993). "So long as the plaintiff's unsuccessful claims are not 'wholly unrelated' to the plaintiff's successful claims, hours spent on the unsuccessful claims need not be excluded from the lodestar amount." *Lunday v. City of Albany,* 42 F.3d 131, 134 (2d Cir.1994) (quoting *Grant,* 973 F.2d at 101). Such fees may be awarded where "the successful and unsuccessful claims are 'inextricably intertwined' and 'involve a common core of facts or [are] based on related legal theories.'" *Reed v. A.W. Lawrence & Co., Inc.,* 95 F.3d 1170, 1183 (2d Cir.1996)(quoting *Dominic v. Consolidated Edison Co. of New York. Inc.,* 822 F.2d 1249, 1259 (2d Cir.1987)). The determination whether to exclude such amounts, however, is within this Court's discretion. *Reed,* 95 F.3d at 1183; *Grant,* 973 F.2d at 101; *Saulpaugh,* 4 F.3d at 135.

■ Mr. Wisehart argues that the ERISA and breach of contract claims, which this Court dismissed on defendant's summary judgment motion, were "inextricably intertwined" with the discrimination claims;

in any event, he asserts, the time spent on these claims was no more than 25 hours. The Court disagrees as to the first contention. The breach of contract claim was premised upon the alleged existence of an oral employment contract between plaintiff and defendant; the existence of that contract turned upon factual issues wholly unrelated to the discrimination claims. Moreover, the breach of contract and discrimination claims involved entirely different legal theories. Thus, the hours spent on the breach of contract claim will be excluded.

It is difficult to articulate the factual distinction between the ERISA claim and the discrimination claims, largely because plaintiff failed of offer any proof on the ERISA claim. *See, e.g., Tanzini*, 952 F.Supp. at 944 ("Tanzini offers no proof that his termination was motivated by his potential for greater pension benefits."). In any event, the allegations are sufficiently distinct, as are the legal theories under which the claims are brought, to merit exclusion of the hours expended on the ERISA claim as well.

Mr. Wisehart's contention as to the number of hours expended upon these claims is unverifiable from the time records submitted. Based upon the Court's review of the papers submitted by plaintiff's counsel on the summary judgment motion and counsel's billing records, however, the Court finds that 25 hours each from Mr. Wisehart and Ms. Boshak should be deducted as devoted to the unsuccessful ERISA and breach of contract claims. These hours result in net deductions from the lodestar of $4,250 for Mr. Wisehart ($170 × 25) and $2,500 for Ms. Boshak ($100 × 25).

The Court reaches a different conclusion as to the failure to promote claims. While plaintiff was not successful on these claims at trial, it cannot be said that such claims were "wholly unrelated" to plaintiff's termination claims. All were based on the same legal theories, to wit, age and disability discrimination. Moreover, much of the proof involved was overlapping. Finally, plaintiff's substantial success on his termination claim cannot be overlooked. *See Lunday*, 42 F.3d at 135. For all of these reasons, the Court finds that no reduction of the lodestar is warranted for plaintiff's unsuccessful failure to promote claims.

Taking this final deduction into account, the Court grants plaintiff's motion for attorneys' fees in the amount of $149,555.63.

### F. Plaintiff's Motion for Costs and Expenses

Plaintiff makes an application for expenses along with his motion for attorneys' fees, and a separate application for costs. To the extent that these requests are duplicative, the Court will attempt to sort them out.

#### 1. Costs

Fed.R.Civ.P. 54(d)(1) provides, in pertinent part, that

[e]xcept when express provision therefor is made either in a statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the Court otherwise directs[.]

28 U.S.C. § 1920 lists the items that the Court may tax as costs.

Two particular items requested by plaintiff are easily disposed of. First, defendant will not be required to reimburse plaintiff for the cost of daily trial transcripts. While under 28 U.S.C. § 1920(2), the Court may tax as costs the court reporter's fees for these transcripts, such reimbursement is limited to transcripts "necessarily obtained for use in the case[.]" *Id.* " 'The mere convenience to counsel is insufficient to justify the taxation of costs.'" *John v. Bd. of Educ. of Mt. Vernon Public Schools*, 891 F.Supp. 122, 123 (S.D.N.Y.1995) (quoting *Smith v. Board of Sch. Comr's of Mobile County*, 119 F.R.D. 440, 444 (S.D.Ala.1988)); *see also Galella v. Onassis*, 487 F.2d 986, 999 (2d Cir.1973) ("(t)o assess the losing party with the premium cost of daily transcripts, necessity—beyond the mere convenience of counsel—must be shown"). The Court can discern no necessity, other than counsel's convenience, for obtaining these transcripts. Thus, these costs will be disallowed.

Plaintiff also seeks reimbursement for the fees of plaintiff's witness James Leon-

ard, totaling $18,920. Plaintiff understood from the very beginning of trial (Tr. at 9) and throughout the trial (Tr. at 1025, 1057), that Mr. Leonard was testifying solely as a fact witness. Now, in support of reimbursement for Mr. Leonard's fees, plaintiff makes the following quizzical argument:

> Whether Mr. Leonard testified as a fact witness or as an expert witness is immaterial since the cost of Mr. Leonard's time was essential to the proper presentation of his case. Mr. Leonard has the training, knowledge and experience necessary to analyze Marine Midland's financial statements and rebut its financial necessity pretext.
>
> The recovery of Mr. Leonard's fees would be analogous to recovery of fees under Fed.R.Civ.P. 26(b)(4)(C) requiring the opposing side to "pay the expert a reasonable fee."

While § 1920(3) allows for witness fees to be taxed as costs, that provision is limited by 28 U.S.C. § 1821(b): "A witness shall be paid an attendance fee of $30 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily occupied in going to and returning from the place of attendance....".[11] "[W]hen a prevailing party seeks reimbursement for fees paid to its own expert witnesses, a federal court is bound by the limits of § 1821(b), absent contract or explicit statutory authority to the contrary." *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 437, 107 S.Ct. 2494, 2495, 96 L.Ed.2d 385 (1987); *see also West Virginia University Hosps., Inc. v. Casey,* 499 U.S. 83, 86, 111 S.Ct. 1138, 1141, 113 L.Ed.2d 68 (1991). Even if Mr. Leonard had testified as an expert witness, plaintiff has identified no statutory authority which would allow reimbursement of the rather exorbitant fees sought. This request is thus denied.

The final item of costs to be disallowed is plaintiff's request for reimbursement of the $5.00 requested for a certificate of good standing. Given these deductions, plaintiff will be awarded costs in the amount of $1,815.20.

---

11. Section 1821(b) has since been amended to increase the allowable per diem from $30 to $40.

### 2. Expenses

Plaintiff also requests reimbursement for a number of expenses, listed in Mr. Wisehart's affidavit at ¶ 21. None of these requests are itemized or documented, and several, such as court fees and transcript fees, appear to be duplicative of plaintiff's request for costs. Subtracting the request for transcript fees, which the Court has addressed above, plaintiff requests expenses in the amount of $12,779.58.

Of this figure, the $2,011.40 for computer research will be disallowed. "[C]omputer research is merely a substitute for an attorney's time that is compensable under an application for attorney's fees and is not a separate taxable cost." *U.S. v. Merritt Meridian Constr. Corp.,* 95 F.3d 153, 173 (2nd Cir.1996). In the exercise of this Court's discretion on the matter of fees and costs, the Court declines to award the expense associated with computerized legal research in the absence of an hour/rate showing by plaintiff.

The remaining $10,768.18 is undocumented. Because of this lack of documentation, the expenses must be reduced. *See F.H. Krear & Co. v. Nineteen Named Trustees,* 810 F.2d 1250, 1269 (2d Cir.1987); *Carrero v. New York City Hous. Auth.,* 685 F.Supp. 904, 909–10 (S.D.N.Y.1988), *modified,* 890 F.2d 569 (2d Cir.1989). The Court finds that $7,500.00 is a reasonable amount for expenses associated with this litigation, and the Court thus awards plaintiff this amount.

### III. Conclusion

In summary, the Court rules as follows:

Defendant's motion for judgment as a matter of law is DENIED;

Defendant's motion for a new trial on plaintiff's termination claim under the ADEA is denied;

Defendant's motion for a new trial on the issue of compensatory damages is DENIED

---

See Judicial Improvements Act of 1990, Pub.L. 101–650, § 314.

on the condition that plaintiff accept remittitur of $170,000, thereby reducing the compensatory damage award to $30,000;

Plaintiff's motion to amend the judgment to include the jury's award of front pay in the amount of $250,000 is GRANTED;

Defendant's cross-motion for a new trial on the issue of front pay is DENIED;

Plaintiff's motion for attorneys' fees is granted in the amount of $149,555.63; costs and expenses further are awarded in the amount of $8,315.20.

Any requests not specifically addressed herein are DENIED.

**IT IS SO ORDERED.**