Catherine E. BRYANT; Lorna Gordon; Lori Krim; Christina Chen; Hannah Newhall; Jessica Erickson; Erin Shoudt; Rebecca Newhall; and Allison Ridder, individually and on behalf of all others similarly situated, Plaintiffs,

v.

COLGATE UNIVERSITY; Neil Grabois President of Colgate University; and Mark Murphy, Athletic Director of Colgate University, Defendants.

No. 93–CV–1029 (FJS).

United States District Court, N.D. New York.

Feb. 27, 1998.

Seidenberg & Strunk Law Offices, Syracuse, NY, for plaintiffs; Faith Seidenberg, Bonnie Strunk, of counsel.

Hughes, Hubbard & Reed, L.L.P., New York City, for defendants; Carla Kerr, George Davidson, of counsel.

## MEMORANDUM–DECISION and ORDER

SCULLIN, District Judge.

### Introduction

Plaintiffs, who are members of the Colgate women's hockey club, sued Colgate University under Title IX for: (1) failure to provide reasonable opportunities for athletic scholarships for female and male athletes in proportion to the number of students of each gender participating in intercollegiate athletics, (2) failure to provide equivalent athletic benefits and opportunities to female athletes and male athletes, and (3) failure to effectively accommodate Plaintiffs' interests in intercollegiate athletics. This Court dismissed the first two claims on Defendants' previous motion for summary judgment, and the parties settled as to the third claim.

Plaintiffs sought relief in the form of: (1) preliminary and permanent injunctions granting varsity status to the women's hockey club as a funded intercollegiate team, (2) an order directing Colgate to provide equal equipment, supplies, funding and benefits to the men's and women's ice hockey teams, (3) an order directing Colgate to obtain ECAC League membership for the women's ice hockey team, (4) an award of damages, (5) a declaration that Colgate has "engaged in a past and continuing pattern and practice of discrimination against the women who play in the ice hockey team on the basis of sex in violation of Title IX," and (6) an order directing Colgate to take other remedial action to overcome the effects of its sexually discriminatory practices and policies.

The final settlement agreement only provided for the women's hockey team to be granted varsity status as a "non-emphasized sport" for a period of five years. The women's hockey team was not afforded treatment equivalent to the men's hockey team.

Presently before the Court is Plaintiffs' motion for attorneys' fees brought pursuant to Title 42 U.S.C. § 1988.

## Discussion

Section 1988(b) of Title 42 provides that prevailing parties in a Title IX action are entitled to reasonable attorneys' fees. The Court follows the "lodestar" method in determining attorneys' fees whereby a court multiplies the number of reasonable hours consumed by the prevailing party in achieving its result by the prevailing market rate in which the court sits. *See Tanzini v. Marine Midland Bank,* 978 F. Supp. 70, 1997 WL 570502, at *10 (N.D.N.Y. 1997). Presently, Plaintiffs assert that they are entitled to $183,733.75 in attorneys' fees plus $1,351.07 in reimbursement for expenses. Plaintiffs argue that as prevailing parties, and because counselors Seidenberg and Strunk have over 46 combined years of civil rights experience, counselor Seidenberg is entitled to an hourly rate of $225; counselor Strunk is entitled to an hourly rate of $175; and associate counselors Clark and Schenck are entitled to an hourly rate of $125.

Defendants argue that the number of hours Plaintiffs' counsel claim is excessive because of duplicity and other concerns. Defendants further argue that the hourly rate requested is too high, and that the lodestar ought to be reduced by two-thirds so to reflect the percent of the claims on which Plaintiffs prevailed. Defendants recalculated the lodestar and derived a total of $76,095.25. Defendants are willing to pay approximately one-third of that amount, $26,000, plus the $1,351.07 of expense reimbursement.

### A. Reasonable Hours

A party must support an application for attorneys' fees with records of work performed in order to recover those fees. *See Lewis v. Coughlin,* 801 F.2d 570, 577 (2d Cir.1986). While the records do not have to be extraordinarily detailed, they must identify the nature of the time expenditure. *See Tanzini v. Marine Midland Bank,* 978 F.Supp. 70, 1997 WL 570502, at *11. The Court finds that Plaintiffs' counsel have adequately detailed their time expenditures so that the Court can assess reasonable attorneys' fees.

However, as Defendants point out, some of the hours Plaintiffs list are duplicative in that several of the tasks which could have been accomplished by one attorney were billed as completed by two or more attorneys. Further, counselors Seidenberg and Strunk billed for tasks usually delegated to associates and law clerks, such as research for and writing of first drafts. The Court also finds that Plaintiffs billed excessive time in relation to the work performed. For these reasons, the Court finds that a thirty percent (30%) reduction of the hours requested is merited.

### B. Hourly Rate

The Supreme Court adopted the marketplace model to determine reasonable hourly rates in calculating attorneys' fees in *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). Presently, the prevailing hourly rates in the Northern District are $150 for partners and $100 for associates. *See Kahre–Richardes Family Foundation, Inc. v. Village of Baldwinsville,* 953 F.Supp. 39, 42 n. 4 (N.D.N.Y.1997). The Court finds no basis for Plaintiffs' request for higher rates. The Court therefore will apply the following hourly rates in calculating the lodestar: Seidenberg, $150; Strunk, $150; associates, $100; attorney travel, $50; attorney ministerial, $50; and law clerk, $40.

### C. Reduction of Lodestar

As stated, Defendants argue that the lodestar ought to be reduced by two-thirds to reflect the percentage of claims on which Plaintiffs prevailed. However, the Supreme Court stated that a court should not exclude from the lodestar total hours spent on unsuccessful claims unless the unsuccessful claims are "wholly unrelated" to a plaintiff's successful claims. *City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 2641, 120 L.Ed.2d 449 (1992); *See also Lunday v. City of Albany,* 42 F.3d 131, 134 (2d Cir. 1994). The entire lodestar can be granted where the successful and unsuccessful claims are "inextricably intertwined" and "involve a common core of facts or are based on related legal theories." *Reed v. A.W. Lawrence & Co. Inc.,* 95 F.3d 1170, 1183 (2d Cir.1996).

Presently, all of Plaintiffs' claims arose from Defendants' failure to recognize women's hockey as a varsity sport. Therefore, the Court finds that the claims are sufficiently related to deny a reduction of the lodestar on the basis of Plaintiffs' failure on two of the three claims.

Nonetheless, the ultimate results of a lawsuit play an important role in determining an award of attorneys' fees. Where, as here, a plaintiff achieves only limited success, even where the claims are interrelated, the Court should focus on the overall relief obtained in relation to the amount of hours spent in litigation. *See Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ("the result is what matters."). The Court in *Hensley* reasoned that where a plaintiff is only partially successful in achieving its desired results, the total hours spent on the litigation multiplied by a reasonable hourly rate would be an excessive amount; unlike the situation where a plaintiff obtains "excellent results" in which case the prevailing party would be entitled to full compensation. *See Id.* 461 U.S. at 435–436. *See also Catlin v. Sobol*, No. 86–CV–222, 1995 WL 363730, at *5. (N.D.N.Y. June 7, 1995) ("The key consideration in determining whether a downward adjustment is warranted is a comparison between the relief sought and the relief ... [obtained].")

Presently, while the results of the settlement provide for only a fraction of the requested relief, Plaintiffs did achieve their primary objective; the elevation of women's hockey to varsity status, albeit for a limited period of time. The Court therefore finds that the lodestar amount should only be reduced by thirty percent (30%).

Accordingly, the Court awards attorneys' fees to the Plaintiff as follows:

| | Requested Hours | 30% Adjustment | Hourly Rate | Total |
|---|---|---|---|---|
| **Seidenberg** | 352.05 | 246.44 | $150 | $ 36,966 |
| **Strunk** | 491.6 | 344.12 | $150 | $ 51,618 |
| **Associates** | 92.9 | 65.03 | $100 | $ 6,503 |
| **Law Clerk** | 141.2 | 98.84 | $ 40 | $ 3,953.60 |
| **Travel** | 9.5 | N/A | $ 50 | $ 475 |
| **Ministerial** | 21.5 | 15.05 | $ 50 | $ 752.50 |
| | | | **Lodestar:** | $100,268.10 |
| | | | **Adjustment (30%):** | $ 70,187.67 |
| | | | **Expenses:** | $ 1,351.07 |
| | | | **Total:** | $ 71,538.74 |

### Conclusion

After consideration of the parties submissions, the applicable law and the entire record, it is hereby

ORDERED that Plaintiffs' motion for attorneys' fees and expenses is GRANTED in part, and DENIED in part, as set forth herein. It is further

ORDERED that Defendants are directed to promptly make payment of attorneys' fees and expenses in the amount of $71,538.74 to Plaintiffs.

**IT IS SO ORDERED.**